STATE OF CONNECTICUT *v.* BERNARD K. SAWYER
(14650)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and KATZ, Js.

Argued April 28—decision released August 31, 1993

*Harry Weller,* assistant state's attorney, with whom were *Corinne Klatt,* assistant state's attorney, and, on the brief, *John A. Connelly,* state's attorney, for the appellant (state).

*Lauren Weisfeld,* assistant public defender, for the appellee (defendant).

CALLAHAN, J., The dispositive issue in this appeal is whether the trial court properly instructed the jury that, during the course of its deliberations concerning greater and lesser included offenses, it must unanimously agree to acquit of the greater offense of murder before it could go on to consider the lesser included offenses of manslaughter.

The defendant, Bernard K. Sawyer, was charged in a substitute information with the crime of murder in violation of General Statutes § 53a-54a. After a jury trial, he was convicted of the lesser included offense of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3). He was sentenced to a term of imprisonment of twenty years. Following his conviction, the defendant appealed to the Appellate Court.

In *State* v. *Sawyer,* 29 Conn. App. 68, 614 A.2d 471 (1992), the Appellate Court reversed the defendant's conviction and ordered a new trial. We granted the state's petition for certification to appeal to this court from the decision of the Appellate Court; *State* v. *Sawyer,* 224 Conn. 917, 617 A.2d 172 (1992); limited to three issues. Because we disagree with the Appellate Court's decision regarding the first certified question, it is unnecessary to address the other two. The first question is: "(1) Did the Appellate Court violate this court's express requirements of *State* v. *Aparo,* 223 Conn. 384, 388 [614 A.2d 401] (1992), *State* v. *Daniels,* 207 Conn. 374, [542 A.2d 306] (1988), and *State* v.

*Stankowski,* 184 Conn. 121 [439 A.2d 918] (1981), that Connecticut juries render unanimous verdicts, when it adopted a jury instruction which permits a jury to render a verdict on a lesser included offense when [it is] 'unable to agree' on the greater offense?"[1] Id. We conclude that it did and reverse the judgment of the Appellate Court.

The Appellate Court accurately concluded that the jury could reasonably have found the following facts. "On February 17, 1989, the defendant was in his apartment when he was surprised by the arrival of his girlfriend, Ernestine Watkins. Also at the apartment were the victim and Franklin Damon. After Watkins had hugged and kissed the victim, she asked him for a ride. The defendant followed them and got into the back seat of the victim's automobile. Watkins refused to get into the car and told the defendant, with whom she was angry, not to go with her, and that he should remain behind while she went to visit her uncle. The defendant then exited the car and the victim left with Watkins.

"After waiting for more than an hour for Watkins to return, the defendant walked to a bar to look for her. At the bar, he observed someone hide a package

---

[1] The remaining two certified questions that we need not consider are: "(2) Does the jury instruction adopted by the Appellate Court violate the separation of powers doctrine by denying a full and fair adjudication of charges brought by state's attorneys under their independent constitutional authority (Article fourth, § 27)? (3) Did the Appellate Court improperly grant a new trial for a jury to consider manslaughter in the second degree and failing to find harmless error when this defendant's jury: (1) was fully charged on all of the lesser included offenses including manslaughter in the second degree; (2) considered the lesser included offense of first degree manslaughter and murder simultaneously; (3) indicated that [it] unanimously agreed that the defendant was guilty of either murder or manslaughter in the first degree; and (4) convicted the defendant of manslaughter in the first degree under facts which indicated that such a verdict was a major victory for the defendant?" *State* v. *Sawyer,* 224 Conn. 917, 617 A.2d 172 (1992).

near a dumpster. He retrieved the package and discovered a .357 magnum pistol that contained a live round in the chamber. He kept the gun and continued his search for Watkins. Upon learning that she had not visited her uncle, the defendant returned home. A short time later he observed the victim's car, with the victim in the driver's seat and Damon in the front passenger seat. He jumped into the back seat demanding to know where Watkins was. After the victim told him that she would return shortly, the defendant demanded that the victim drive him to where Watkins was. When the victim refused, the defendant put the gun to the back of the victim's neck, and pulled back the hammer. The victim again refused, stating that he had promised to give Damon a ride home. The victim bowed his head slightly and the gun discharged, sending a bullet through his left carotid artery and killing him.

"Immediately after the gun discharged, the defendant said, 'Oh my God, what have I done, I didn't mean to do it,' and ran from the scene. He turned himself in to the police the following day and handed over the weapon used in the crime." *State* v. *Sawyer,* supra, 29 Conn. App. 70–71.

At trial, both the state and the defendant offered evidence on the issue of whether the defendant had intentionally applied pressure to the gun's trigger. Final arguments similarly focused on whether the killing of the victim had been intentional.·

Before final arguments, the defendant filed a request that the court instruct the jurors that "if they find that the elements of murder have not been proven beyond a reasonable doubt, *or if they are unable to agree unanimously that the elements of murder have been so proved,* they may then consider whether the defendant is guilty of the lesser included offense of manslaughter in the first degree and/or manslaughter in the second

degree." (Emphasis added.) The court did not instruct the jury pursuant to the defendant's request. Rather, after charging on the essential elements of murder, the court advised the jury to consider the lesser included offenses of manslaughter only if it came to the conclusion that the state had failed to prove the elements of murder beyond a reasonable doubt.[2] The court then instructed the jury as to the essential elements of the two lesser included offenses of manslaughter, namely, manslaughter in the first degree in violation of § 53a-55 (a) (3) and manslaughter in the second degree in violation of General Statutes § 53a-56. After doing so, the court reasserted the sequence to be followed by the jury in its deliberations, restating to the jury that it should consider the lesser included offense of manslaughter in the first degree only if it came to the conclusion that the defendant was not guilty of murder and should consider the lesser included offense of manslaughter in the second degree only if it came to the conclusion that the defendant was not guilty of

[2] The court instructed the jury as follows: "And if you find that the state has proven each of these elements beyond a reasonable doubt, your verdict would be guilty, as charged, of murder. If, however, you do not find that each of these elements have been proven beyond a reasonable doubt then, obviously, your verdict on the charge of murder would be not guilty. But, again, that does not end your participation in this particular case.

"Assume for the moment that you come to the conclusion that the state has proved the elements of murder and you render a verdict of guilty. Obviously, that would stop your deliberations and you would then report back that verdict. But, if during the course of your deliberations, you come to the conclusion that the state did not prove one or more of the elements that I've just given to you on the charge of murder then, obviously, your verdict would be not guilty of murder.

"Then you would go to what we consider in law lesser included offenses. Now, in this case I'm going to charge you on two lesser included offenses. They are going to be manslaughter in the first degree and manslaughter in the second degree. So you get to this part of the case if you come to the conclusion that the state hasn't proved one or more of the elements of the charge of murder."

manslaughter in the first degree.[3] The defendant took an exception to the court's refusal to give his requested charge.[4]

---

[3] The trial court stated: "So, let's just recapitulate because, I know I've read a lot to you and you might be getting a little concerned about it.

"We start off with the charge of murder and go through that and then decide whether or not the state has proved all the necessary elements as I've given them to you of murder in the first degree. And if so, then, that would end your deliberations. You would come back in and find the defendant guilty as charged. If, however, you come to the conclusion that the state has not proved one or more of the elements of murder beyond a reasonable doubt then, obviously, your verdict would be not guilty to the charge of murder.

"Your next step would be then to consider the aspect of manslaughter in the first degree as I charge it to you and the elements I have given on that particular charge. If after your discussion you come to a conclusion that the state has proved all of the elements of manslaughter in the first degree then your verdict would be guilty to manslaughter in the first degree. But, if you go through and come to the conclusion that the state has not proved one or more of the elements of manslaughter in the first degree, then you would come to the conclusion and say that the defendant is not guilty of manslaughter in the first degree. Then if you come to that conclusion then you would go through the elements that I have given to you on manslaughter in the second degree. And, again, if you come to the conclusion that the state has proved the elements of the charge beyond a reasonable doubt then your verdict would be guilty of manslaughter in the second degree. Then, obviously, after you deliberate and come to the conclusion that the state has not proved elements of manslaughter in the second degree then your verdict would be not guilty and that would end your deliberations."

[4] At that point the court also instructed the jury concerning the proper procedure for accepting the verdict. "The foreperson should take the first seat. And the clerk will then ask the foreperson, have you reached a verdict and, obviously, the answer will be yes or no. So, then, what she will do is to read the information to you on the charge of murder. So, the foreperson will say—and she will ask you, is he guilty or not of the charge of murder as charged. And, obviously, it will either be guilty or not guilty. If you say guilty, that will end it and we will go through what we call a repetition and the clerk will say to each and every one of you, is that your verdict, so say you all. And, audibly, you all have to answer.

"Now, if per chance on the first charge of murder the foreperson comes back and says not guilty, then the clerk will go through and read the charge of manslaughter in the first degree and we will go through the same thing with the foreperson, is the defendant guilty or not guilty of the charge of manslaughter in the first degree. And depending on that, if it is guilty,

Thereafter, during its deliberations, the jury sent a note to the court. The note read: "With no unanimous decision on the charge of murder or manslaughter in the first degree, but unanimous as to guilty on one count or the other, please advise." The court discussed with counsel for the state and the defendant the proper instruction to be given to the jury in response to the note. It was the court's view that it must instruct the jury that, if it could not reach a unanimous agreement to acquit the defendant of the charge of murder, it could not proceed to consider the lesser included offense of manslaughter in the first degree and the court would have to declare a mistrial.[5] The defendant disagreed.

then we will make a repetition and ask everybody, is that your verdict so say you all. And if the verdict on manslaughter in the first degree is not guilty, then the clerk will go through the charge of manslaughter in the second degree and to go through the same thing with the foreperson and depending on what the foreperson says, guilty or not guilty, and we will go through the same repetition. So, it's all done orally. That is the sequence that we will follow."

[5] Outside the presence of the jury, the following colloquy occurred:

"The Court: With a discussion with counsel, what the court is going to say in interpreting the note, I will instruct the jury that before they go as to manslaughter in the first degree they must agree unanimously on the charge of murder in their deliberations. That, obviously, would either be guilty or not guilty and they could not go to manslaughter in the first degree until they unanimously came to the position of not guilty on the charge of murder. It is the court's position as far as the law in Connecticut at this particular time, that if they cannot reach a unanimous verdict on the charge of murder either of guilty or not guilty then we get to a question of mistrial and we don't put the charge of murder aside and go to the manslaughter in the first degree without a decision as to murder. Anybody got any comments?

"[Defense Counsel:] Yes, Your Honor. At this time I would simply ask again that the defendant's request to charge, number two, which I think would instruct the jury contrary to what Your Honor just stated, be given to the jury. I'm sure that Your Honor has already indicated that that will not be done. I would ask it to be done to be consistent. Clearly, that is a request of charge that is crucial at this point in the trial. So, I would renew the request that defendant's request number two be given to the jury at this time.

"The Court: Miss Klatt.

After its discussion with the parties, the court brought the jury into the courtroom and instructed it as follows: "Well, I'm just going to make this brief statement to see if it helps you out. That in the sequence of events in your decision as to the charges that I gave to you the other day, of murder, manslaughter in the first degree or manslaughter in the second degree. The first thing that you must determine is on the charge of murder. Now, you have to come to a unanimous decision on that charge of either guilty or not guilty. And, obviously, if you found your verdict were guilty then you, obviously, wouldn't go to any lesser included offense.

"You'd have to have unanimous decision of not guilty on the charge of murder before you then started to consider the charge of manslaughter in the first degree and thereon. So, you've got to come to decision first of all, unanimously, one way or the other on the charge of murder before you at all consider the lesser included offense of manslaughter in the first degree. And, again, I am not referring to manslaughter in the second degree because that is not included in your note.

"So, if it helps you out at all, again, you have to come to a decision on the crime as charged, murder, before you go to the lesser included offense of manslaughter. It has got to be unanimous, either guilty or not guilty on the charge of murder before [you go on]. And, obviously, if it were guilty to murder you don't go to man-

"[The State:] And, again, Your Honor, I would object to the defendant's second request to charge. I don't believe it is a law in the state of Connecticut at least at this juncture. And I have no exception to the court's proposed instructions to the jury at this point.

"The Court: Obviously, I think you and I agree, Mr. McWhirter [Defense Counsel], that the present case law in Connecticut says that I cannot do as you are requesting in your request to charge. So, I can only rely on the wisdom from above. And whether that is precise or imprecise at this particular time, we will all have to wait for another day. But, obviously, your exception is noted."

slaughter in the first degree. So, in order to get to manslaughter in the first degree you must, unanimously, obviously, find the defendant not guilty of murder. And if you can't do that then send me a note and I'll see what else I can tell you."

The jury subsequently acquitted the defendant of murder and convicted him of the lesser included offense of manslaughter in the first degree. The verdicts were unanimous.

Following his conviction, the defendant appealed to the Appellate Court, claiming that the trial court had improperly instructed the jury that it had to be unanimous in its verdict on the greater offense of murder before it could consider the lesser offense of manslaughter in the first degree. After an initial oral argument before the Appellate Court, that court ordered supplemental briefing and reargument en banc on the issue of the proper jury instruction to be given by the trial court if the crime with which the defendant is charged requires an instruction on lesser included offenses.

Before the Appellate Court, the defendant claimed that the trial court had improperly given an acquittal first transitional instruction, i.e., that the jury was incorrectly instructed not to consider the lesser included offenses until it had unanimously found the defendant not guilty of the greater offense of murder. The defendant argued that the proper instruction to guide the jury in its transition from the greater offense to lesser included offenses is a reasonable efforts instruction, which would have allowed the jury to consider lesser included offenses if it was unable to agree on the greater offense so long as it had made a reasonable effort to agree on the greater offense.

The Appellate Court, by a five to two vote, after having considered the merits of both the acquittal first and the reasonable efforts instructions, rather than cast its

lot definitively with either instruction, adopted what it termed the "optional approach" articulated by the Second Circuit Court of Appeals in *United States* v. *Tsanas,* 572 F.2d 340, 346 (2d Cir.), cert. denied, 435 U.S. 995, 98 S. Ct. 1647, 56 L. Ed. 2d 84 (1978).[6] *State* v. *Sawyer,* supra, 29 Conn. App. 74. This optional approach postulates that neither instruction is wrong as a matter of law, that the defendant can request either instruction, and that the court is bound to honor the defendant's request. Because the defendant in this case had requested a reasonable efforts instruction and the trial court had refused his request, the Appellate Court concluded that in the "interests of justice" it must reverse the defendant's conviction of manslaughter in the first degree and order a new trial. Id., 76.[7] This appeal followed.

The state argues that because unanimity is required for all criminal verdicts, the trial court properly instructed the jury that it must unanimously agree to acquit the defendant of the greater offense of murder before it could consider any lesser included manslaughter offenses. The state contends, therefore, that the Appellate Court was incorrect when it concluded that the trial court, at the defendant's option, should have given an instruction that would have allowed the jury to consider the lesser included offense of manslaugh-

[6] In *United States* v. *Tsanas,* 572 F.2d 340, 346 (2d Cir.), cert. denied, 435 U.S. 995, 98 S. Ct. 1647, 56 L. Ed. 2d 84 (1978), the Second Circuit Court of Appeals, after discussing the merits of the acquittal first and reasonable efforts instructions, held: "With the opposing considerations thus balanced, we cannot say that either form of instruction is wrong as a matter of law. The court may give the one that it prefers if the defendant expresses no choice. If he does, the court should give the form of instruction which the defendant reasonably elects."

[7] This conclusion made it unnecessary for the Appellate Court to consider the defendant's additional claim that General Statutes § 53a-55 (a) (3) is unconstitutionally vague. *State* v. *Sawyer,* 29 Conn. App. 68, 69–70, 614 A.2d 471 (1992).

ter in the first degree before it reached a unanimous agreement to acquit the defendant of the charged crime of murder.

The issue of what instruction should guide the jury's deliberations to assist it in making the transition from consideration of the greater offense to consideration of one or more lesser included offenses has never been directly addressed by this court. Under case law, however, "[i]t is settled doctrine in Connecticut that a valid jury verdict in a criminal case must be unanimous. Practice Book § 867; *State* v. *Stankowski,* 184 Conn. 121, 147, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); *State* v. *Gannon,* 75 Conn. 206, 229–30, 52 A. 727 (1902)." *State* v. *Daniels,* 207 Conn. 374, 388, 542 A.2d 306 (1988), cert. denied, 489 U.S. 1069, 109 S. Ct. 1349, 103 L. Ed. 2d 817 (1989). " 'The possibility of disagreement by the jury is implicit in the *requirement of a unanimous verdict* and is part of the constitutional safeguard of trial by jury.' " (Emphasis added.) *State* v. *Peary,* 176 Conn. 170, 183, 405 A.2d 626 (1978), cert. denied, 441 U.S. 966, 99 S. Ct. 2417, 60 L. Ed. 2d 1072 (1979), quoting *State* v. *Ralls,* 167 Conn. 408, 421–22, 356 A.2d 147 (1974).

Moreover, although the lesser included offense doctrine provides the jury with alternatives to acquittal or conviction of the greater offense; *Beck* v. *Alabama,* 447 U.S. 625, 633, 100 S. Ct. 2382, 65 L. Ed. 2d 56 (1980); the doctrine does not imply that the jury should be allowed to consider the charged offense and lesser included offenses in any order and with whatever degree of dedication it chooses. Nor does the presence of a lesser included offense somehow obviate the requirement that a unanimous verdict be rendered on all of the offenses considered by the jury, including the greater offense. "A corequisite of a lesser-included-offense charge . . . is that there be a rational basis

*for an acquittal* on the offense charged and a conviction on the included offense. *State* v. *Pallanck,* 146 Conn. 527, 530, 152 A.2d 633 [1959]; see 23A C.J.S., Criminal Law, § 1298; Model Penal Code, Tentative Draft No. 5 (1956), comment § 1.08." (Emphasis added.) *State* v. *Brown,* 163 Conn. 52, 61 n.2, 301 A.2d 547 (1972).

The Appellate Court nevertheless determined that, because "it is the defendant's liberty that is involved . . . he should be allowed to make the choice" of the transitional instruction to be given the jury.[8] *State* v. *Sawyer,* supra, 29 Conn. App. 74. In support of its determination, the Appellate Court noted that by giving the defendant the option to choose between two transitional instructions, "it allows the defendant to

---

[8] In adopting the optional approach espoused by the Second Circuit Court of Appeals in *United States* v. *Tsanas,* 572 F.2d 340, 346 (2d Cir.), cert. denied, 435 U.S. 995, 98 S. Ct. 1647, 56 L. Ed. 2d 84 (1978), the Appellate Court joined a number of decisions from other circuits and state jurisdictions that endorse either the optional approach or the reasonable efforts instruction. See, e.g., *United States* v. *Jackson,* 726 F.2d 1466, 1469–70 (9th Cir. 1984); *Pharr* v. *Israel,* 629 F.2d 1278, 1282 (7th Cir. 1980); *Catches* v. *United States,* 582 F.2d 453, 459 (8th Cir. 1978); *People* v. *McGregor,* 635 P.2d 912, 914 (Colo. App. 1981); *Wright* v. *United States,* 588 A.2d 260, 262 (D.C. App. 1991); *State* v. *Ferreira,* 8 Haw. App. 1, 791 P.2d 407, cert. denied, 71 Haw. 668, 833 P.2d 901 (1990); *State* v. *Korbel,* 231 Kan. 657, 661, 647 P.2d 1301 (1982); *People* v. *Handley,* 415 Mich. 356, 358–60, 329 N.W.2d 710 (1982); *State* v. *Thomas,* 401 Ohio St. 3d 213, 218–20, 533 N.E.2d 286 (1988), cert. denied, 493 U.S. 826, 110 S. Ct. 89, 107 L. Ed. 2d 54 (1989); *Tarwater* v. *Cupp,* 304 Or. 639, 645, 748 P.2d 125 (1988); *State* v. *Allen,* 301 Or. 35, 38–40, 717 P.2d 1178 (1986); *State* v. *Duff,* 50 Vt. 324, 554 A.2d 214 (1988); *State* v. *Labanowski,* 117 Wash. 2d 405, 816 P.2d 26 (1991).

Our conclusion endorsing the acquittal first instruction, however, is consistent with those reached by other jurisdictions. See, e.g., *Lindsey* v. *State,* 456 So. 2d 383, 387 (Ala. Crim. App. 1983), aff'd, 456 So. 2d 393 (Ala. 1984), cert. denied, 470 U.S. 1023, 105 S. Ct. 1384, 84 L. Ed. 2d 403 (1985); *Whiteaker* v. *State,* 808 P.2d 270, 274 (Alaska App. 1991); *State* v. *Hernandez,* 167 Ariz. 236, 240–41, 805 P.2d 1057 (1990); *People* v. *Padilla,* 638 P.2d 15, 17 (Colo. 1981); *Lamar* v. *State,* 243 Ga. 401, 403, 254 S.E.2d 353, appeal dismissed, 444 U.S. 803, 100 S. Ct. 23, 62 L. Ed. 2d 16 (1979); *Middlebrooks* v. *State,* 156 Ga. App. 319, 320, 274 S.E.2d 643 (1980); *State* v.

gamble everything on the greater charge, hoping for an acquittal or at least a hung jury, or . . . at his option, to hedge his bet by gambling that the jury, as a result of a compromised verdict, may find him guilty of a lesser charge." Id.

The jury instruction to be given at the conclusion of a trial, however, is a question of law that cannot be resolved by deference to the wish of the defendant or by a sporting theory of justice. See *State* v. *Ferreira,* 8 Haw. App. 1, 5, 791 P.2d 407, cert. denied, 71 Haw. 668, 833 P.2d 901 (1990); *State* v. *Labanowski,* 117 Wash. 2d 405, 422, 816 P.2d 26 (1991). A criminal trial is not a game of chance. Allowing the defendant to choose the transitional instruction and to gamble on its consequences slights the desirable goals of thorough deliberations and finality and neglects the state's interest in the resolution of the charges on which it presented the defendant. See *People* v. *Boettcher,* 69 N.Y.2d 174, 181–84, 505 N.E.2d 594, 513 N.Y.S.2d 83 (1987). Such an approach to transitional instructions is dictated more by expediency than by a commitment that justice be done to both the state and the defendant, and that the charges brought be thoroughly deliberated, considered and disposed of definitively. See Uniform Rules of Criminal Procedure 535 (b), comments, 10 U.L.A. 281–82 (1974) (unanimity requirement leads to more thorough consideration of issues and more careful deliberation).

It is true, as the Appellate Court noted, that the defendant's liberty is at stake in a criminal trial. That

*Van Dyken,* 242 Mont. 415, 791 P.2d 1350, cert. denied, 498 U.S. 920, 111 S. Ct. 297, 112 L. Ed. 2d 251 (1990); *People* v. *Boettcher,* 69 N.Y.2d 174, 505 N.E.2d 594, 513 N.Y.S.2d 83 (1987); *State* v. *Wilkins,* 34 N.C. App. 392, 398–401, 238 S.E.2d 659, cert. denied, 294 N.C. 187, 241 S.E.2d 516 (1977); *Commonwealth* v. *Hart,* 388 Pa. Super. 484, 499–500, 565 A.2d 1212 (1989), appeal denied, 525 Pa. 642, 581 A.2d 569 (1990); *State* v. *McNeal,* 95 Wis. 2d 63, 66–68, 288 N.W.2d 874 (1980).

interest is certainly substantial. That does not mean, however, that the defendant's liberty interest is the only substantial interest at stake in a criminal trial, so that he should have the right to select the mode of the transitional instruction based on his risk assessment of the outcome of the trial. The state also has a substantial interest, namely, its interest in securing a conviction on the most serious charge that the evidence will reasonably support.

It is, moreover, the duty of the court to structure the jurors' deliberations in a manner that permits them to perform in an orderly fashion their fact-finding function in relation to the charged crime and any lesser included offenses. See *State* v. *Gannon,* supra, 219–24. This court's decisions in *State* v. *Aparo,* supra, *State* v. *Daniels,* supra, and *State* v. *Stankowski,* supra, require Connecticut juries to render unanimous verdicts in criminal cases. As a consequence, to ensure that the charged offense has been determined by unanimous agreement, the court must direct the jury to reach a unanimous decision on the issue of guilt or innocence of the charged offense before going on to consider the lesser included offenses.

In *State* v. *Aparo,* supra, 388, we held that the only valid verdict in a criminal case is one that has been rendered by a unanimous jury. In *Aparo,* the state had charged the defendant with being an accessory to murder and with conspiracy to commit murder. A twelve person jury acquitted the defendant of the accessory charge but could not reach a unanimous decision on the conspiracy charge. The court therefore declared a mistrial on the conspiracy count in the information. The defendant argued in this court that because she had obtained at least six votes for acquittal on the mistried conspiracy charge,[9] all that would have been required

_____

[9] The actual vote on the conspiracy charge was seven to five for acquittal. *State* v. *Aparo,* 223 Conn. 384, 388, 614 A.2d 401 (1992).

to acquit her if that charge had been tried separately, the double jeopardy clause of the fifth amendment protected her against a second prosecution for conspiracy. We determined the defendant's double jeopardy claim to be without merit because we concluded that the jury, by failing to agree, had not reached a valid verdict.

Likewise, in *State* v. *Daniels,* supra, we considered whether a jury must render a unanimous verdict on the existence of a mitigating factor during a sentencing hearing held pursuant to General Statutes § 53a-46a, the death penalty statute. In *Daniels,* the jury had unanimously determined that the state had proven an aggravating factor. The jurors, however, were evenly split as to whether the defendant had proven a mitigating factor. The state argued that because the defendant bore the burden of proving a mitigating factor, the state was entitled to have the court sentence him to death. The defendant claimed that under the circumstances he was entitled to a life sentence.

In *Daniels,* we rejected both arguments and stated: "It is settled doctrine in Connecticut that a valid jury verdict in a criminal case must be unanimous. Practice Book § 867; *State* v. *Stankowski,* [supra]; *State* v. *Gannon,* [supra]. A nonunanimous jury therefore cannot render any 'finding' of fact." Id., 388. We concluded that because of the lack of jury unanimity there had been no determination of whether a mitigating factor existed. Likewise, if a lack of unanimity is countenanced as to the determination of guilt or innocence of a charged offense, there will not be a determination of whether an accused is guilty or innocent of that offense.

Finally, in *State* v. *Stankowski,* supra, we again emphasized the importance of jury unanimity, and noted that because of the requirement of unanimity, there always exists a possibility that a jury may be deadlocked. In *Stankowski,* the jury, after having been

instructed on the charged offense of murder and the lesser included offense of manslaughter, asked the trial court whether it had " 'to reach a unanimous decision on the first or more serious charge before considering the lesser charge?' " Id., 143–44. The trial court responded that the jury must reach a unanimous decision on the greater offense and then gave a "Chip Smith" instruction.[10] Id., 144–46. The defendant was subsequently convicted of murder.

On appeal, the defendant challenged the "Chip Smith" charge, claiming that it violated his right to due process because it coerced some jurors into adopting the conclusions of the other jurors. Id., 146. In *Stankowski,* we did not directly consider the issue raised in the present case. In addressing the "Chip Smith" question in the context of a jury charge that instructed on greater and lesser included offenses, however, we did not question that the jury, as instructed by the trial court, must first achieve unanimity on the charged crime before considering any lesser included offenses.[11] Moreover, we stated that " '[t]he possibility of disagreement by the jury is implicit in the *require-*

[10] The "Chip Smith" charge was given in *State* v. *Stankowski,* 184 Conn. 121, 147, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981), in order to help the jury achieve unanimity, whether that unanimity involved a guilty or not guilty verdict. A "Chip Smith" instruction reminds the jurors that they must act unanimously, while also encouraging a deadlocked jury to reach unanimity. See *State* v. *Smith,* 49 Conn. 376 (1881); see also 5 Connecticut Practice, D. Borden & L. Orland, Connecticut Criminal Jury Instructions (1986) § 4.8.

[11] In response to the jury's question, the trial court answered: " 'The last question which you sent out reads as follows: "Does the jury have to reach a unanimous decision on the first or more serious charge before considering the lesser charge?"

" 'The answer to the question is yes. You make a decision on the greater charge first and then you go on to the lesser charge, if you decide that the accused is not guilty of murder in the first degree on the first charge. Then and only then will you consider the lesser included charge.' " *State* v. *Stankowski,* 184 Conn. 121, 146 n.6, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981).

*ment of a unanimous verdict* and is part of the constitutional safeguard of trial by jury.' '' (Emphasis added.) Id., 147, quoting *State* v. *Peary,* supra, 183; see *State* v. *Ralls,* 167 Conn. 408, 421–22, 356 A.2d 147 (1974).

The defendant argues, however, that *Aparo, Daniels,* and *Stankowski* do not mandate that a jury must first arrive at a unanimous agreement on the charged offense before it may consider lesser included offenses. Specifically, the defendant argues that although *Aparo* and *Daniels* confirm the principle that jury verdicts must be unanimous, those cases are factually distinct from the present case because they do not implicate the jury's consideration of lesser included offenses. According to the defendant, both cases simply address the issue of what consequences flow from a jury's inability to reach a unanimous verdict on a single charged offense and have no precedential value for the present case. We disagree.

Although neither *Aparo* nor *Daniels* specifically considered the proper transitional instruction between greater and lesser included offenses, they offer considerable guidance for this case. Neither *Aparo* nor *Daniels* said that *only some* jury verdicts must be unanimous. Rather, both stated categorically that the *only valid verdict* in a criminal case is one delivered by a unanimous jury.

The defendant assumes, nonetheless, that when lesser included offenses are involved, a middle ground, compromise position always waits in the wings and may be turned to by the jury at any time that it is unable to agree on a verdict on the charged offense. That assumption carries with it the further assumption that at some point, the offense that the state has elected to prosecute may simply be bypassed and left in limbo without any resolution by way of a verdict. We are unaware of any authority in this state for that proposition.

Although the jury may initially be instructed concerning lesser included offenses, and may eventually turn to these lesser included offenses to reach a verdict, it should not be given an instruction that could encourage it to give the charged offense short shrift and to turn to lesser included offenses in order to reach a compromise verdict virtually at the outset of its deliberations.[12] Only after it has confronted and unanimously completed the difficult task of deciding the guilt or innocence of the accused as to the charged offense should the jury consider lesser included offenses. Anything less dilutes the right of the state and the defendant to have the jury give its undivided attention and most serious deliberations to the offense with which the defendant is charged and flies in the face of the unanimity requirement of *Aparo* and *Daniels*. Cf. *State* v. *Wussler,* 139 Ariz. 428, 430, 679 P.2d 74 (1984) ("[w]e find . . . that the instruction which requires an acquittal of the offense charged before consideration of lesser-included offenses provides for a more logical and orderly process for the guidance of the jury in its deliberations").

The defendant also contends, and the Appellate Court concluded, that *Stankowski* is distinguishable from this case. He asserts that our decision in *Stankowski* does not hold that the proper transitional instruction concerning lesser included offenses is the acquittal first instruction. Rather, he argues, *Stankowski* addressed only the propriety of the "Chip Smith" instruction given by the trial court. We agree that *Stankowski* does not directly address the question of whether an acquittal first instruction is required. The *Stankowski* court implicitly approved such an instruction, however, by noting that the trial court had given an acquittal first

[12] "Reasonable efforts" is an imprecise term that could be interpreted as minimal efforts by a jury faced with the difficult task of attempting to reach a verdict on the charged offense in a particularly sympathetic situation.

instruction in a direct answer to the jury's question as to whether it must agree on acquittal of the greater charge before considering the lesser included offense. The court then concluded that the "Chip Smith" charge given to resolve the temporary impasse caused by that instruction was not prejudicial to the defendant. If the *Stankowski* court had entertained misgivings about the propriety of the acquittal first instruction, it is unlikely that such misgivings would not have been expressed.

The Appellate Court, although not holding that the reasonable efforts instruction is required as a matter of law, expressed the opinion that it would be beneficial to both the state and the defendant.[13] According to the Appellate Court, the reasonable efforts instruction would assist the state in obtaining a conviction for at least some crime, even if not for the more serious crime that the state had elected to prosecute. *State* v. *Sawyer,* supra, 29 Conn. App. 75. As for the defendant, the Appellate Court noted that the reasonable efforts instruction would reduce the likelihood that he would be convicted of the greater charge because the jury, rather than simply convicting of the greater offense to avoid a mistrial, would proceed to the lesser included offenses and arrive at a compromise verdict. The Appellate Court also indicated a belief that a reasonable efforts instruction would be less likely to result in deadlocked juries and mistrials because such an instruction does not create the restraint to jury compromise that the acquittal first instruction does. Id., 74. Although those possibilities may exist, we believe that the Appellate Court, in trying to do something for everyone, misinterpreted precedent and gave "insufficient weight to the principle that it is the duty of the

---

[13] The Appellate Court noted: "Although we favor the reasonable efforts instruction and would like to see its adoption in Connecticut, we cannot conclude that it is mandated by law." *State* v. *Sawyer,* 29 Conn. App. 68, 75–76, 614 A.2d 471 (1992).

jury not to reach compromise verdicts based on sympathy for the defendant or to appease holdouts, but to render a just verdict by applying the facts it finds to the law [with which] it is charged." *People* v. *Boettcher,* supra, 183.

Moreover, neither the Appellate Court nor the defendant on appeal to this court has lent substance to the specter of large numbers of mistrials resulting from the instructions presently employed by citing compelling empirical, statistical or other pertinent studies. Nor has it been demonstrated that mistrials are now the source of an inordinate burden on the public purse or unfairly abridge a defendant's right to bring his or her trial to a conclusion before a single tribunal.

Further, Connecticut has long accepted the possibility of juror disagreement and the fact that mistrials are a natural consequence of the unanimity requirement. *State* v. *Stankowski,* supra, 147. Requiring unanimity "induces a jury to deliberate thoroughly and helps to assure the reliability of the ultimate verdict." *State* v. *Daniels,* supra, 389. The fact that a jury may occasionally be unable to reach a unanimous verdict by following the acquittal first instruction does not warrant the precipitous abandonment of precedent by tinkering with an instruction for which the necessity of repair has not been convincingly established. See *State* v. *Boettcher,* supra, 183–84; see L. Flynn, "Does Justice Fail When the Jury Is Deadlocked?" 61 Judicature 129 (1977) (a deadlocked jury may be "a reaffirmation of the system's integrity insofar as it serves to protect the minority's dissent, representing the subtle interplay of two vital concepts in the criminal law—the presumption of innocence and the exercise of reasonable doubt").

In order to preserve and promote the integrity of jury deliberations when greater and lesser included offenses

are at issue, and to encourage the thorough and careful discussion and consideration owed the state and the defendant, we are unwilling to relax the prevailing unanimity requirement that is mandated by our common law. Although we have recognized that jurors may in fact compromise; *State* v. *Monte,* 131 Conn. 134, 137, 38 A.2d 434 (1944); we have never sought to encourage compromise and certainly have never openly advocated it.[14]

The reasonable efforts instruction also raises grave questions of public policy because of its implications for the doctrine of the implied acquittal in the context of the constitutional protection against double jeopardy. We have held that "[w]here a greater offense has been charged, conviction on a lesser offense is an acquittal on the greater." *State* v. *Troynack,* 174 Conn. 89, 99, 384 A.2d 326 (1977). In *Troynack,* we stated that "the trial court instructed the jury that if they did not find [the defendant] guilty of manslaughter in the first degree, they must then consider whether he was guilty of manslaughter in the second degree. The verdict of guilty of manslaughter in the second degree was thus an implicit acquittal on the greater offense." Id.; see also *Price* v. *Georgia,* 398 U.S. 323, 326–27, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970). Under the acquittal first instruction, the jury's verdict of guilty of a lesser included offense operates as an acquittal of the greater offense for the purposes of the double jeopardy clause. *State* v. *Troynack,* supra. Under a reasonable efforts instruction, however, it is unclear whether the jury's verdict of guilty of a lesser included offense would result in the defendant's implied acquittal of the greater offense, because, in the absence of some form of spe-

---

[14] The court in *State* v. *Monte,* 131 Conn. 134, 136, 38 A.2d 434 (1944), stated: "A verdict must in the end speak a conclusion to which *each individual juryman gives his conscientious assent.*" (Emphasis added.)

cial verdict, it would not be known whether the jury had unanimously agreed to acquit of the greater offense.

In *State* v. *Aparo,* supra, we expressly denied the defendant's double jeopardy claim that was based on the failure of the jury to achieve unanimity concerning the charge of conspiracy to commit murder. Under *Aparo's* reasoning, the defendant in the present case could similarly have been faced with the prospect of a retrial on the greater offense of murder had the trial court given the jury the reasonable efforts instruction requested because such an instruction does not logically give rise to an implied acquittal of the greater offense. "[T]he [state] should not be precluded from retrying a defendant on the greater offense unless a jury actually finds him innocent of that charge." *People* v. *Boettcher,* supra, 182. The acquittal first instruction avoids the double jeopardy problems that inhere in an instruction requiring only that the jury make a reasonable effort to arrive at a unanimous verdict on the charged crime before considering the lesser offenses.

In summary, we conclude that the precedent of *Aparo, Daniels* and *Stankowski* and sound judicial policy counsel that we answer the first certified question in the affirmative and continue to require trial courts to instruct juries to reach agreement on the charged offense before giving consideration to lesser included offenses.

The judgment of the Appellate Court is reversed and the case is remanded to that court for consideration of the defendant's remaining claim.

In this opinion PETERS, C. J., and BORDEN, J., concurred.

KATZ, J., with whom BERDON, J., joins, dissenting. The "acquittal" instruction that the majority today

requires was catalyzed by pattern jury instructions used by the federal courts in the 1960s[1] and has since been upheld in many state and federal courts.[2] To limit jury deliberations, in effect, to one charge, however, impedes the jury's ability to reach a verdict and indiscriminately prevents desirable compromise. Desirable compromise is compromise that is allowed when the only alternatives are a hung jury, conviction of an offense more serious than some jurors reasonably believe the defendant committed, or acquittal of a guilty defendant. The "reasonable efforts" charge attempts to avoid coercive deliberations because it does not require any form of agreement on the charged offense. This instruction can improve jury deliberations and reduce the number of hung juries by offering the jury more decision alternatives earlier in deliberations and, thus, allowing jurors mutually to agree upon a verdict.

Promoting compromise was the original intent of the *Allen* charge. *Allen* v. *United States,* 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896).[3] In the past we have

[1] W. Mathes & E. Devitt, Federal Jury Practice and Instructions (1965) § 15.10.

[2] See, e.g., *United States* v. *Moccia,* 681 F.2d 61 (1st Cir. 1982); *Lindsey* v. *State,* 456 So. 2d 383 (Ala. Crim. App. 1983), aff'd, 456 So. 2d 393 (Ala. 1984), cert. denied, 470 U.S. 1023, 105 S. Ct. 1384, 84 L. Ed. 2d 403 (1985); *State* v. *Wussler,* 139 Ariz. 428, 679 P.2d 74 (1984); *Lamar* v. *State,* 243 Ga. 401, 254 S.E.2d 353, appeal dismissed, 444 U.S. 803, 100 S. Ct. 23, 62 L. Ed. 2d 16 (1979); *State* v. *Van Dyken,* 242 Mont. 415, 791 P.2d 1350, cert. denied, 498 U.S. 920, 111 S. Ct. 297, 112 L. Ed. 2d 251 (1990); *People* v. *Boettcher,* 69 N.Y.2d 174, 505 N.E.2d 594, 513 N.Y.S.2d 83 (1987); *State* v. *Wilkins,* 34 N.C. App. 392, 238 S.E.2d 659, cert. denied, 294 N.C. 187, 241 S.E.2d 516 (1977); *Commonwealth* v. *Hart,* 388 Pa. Super. 484, 565 A.2d 1212 (1989), appeal denied, 525 Pa. 642, 581 A.2d 569 (1990); *State* v. *Clayton,* 658 P.2d 624 (Utah 1983); *State* v. *McNeal,* 95 Wis. 2d 63, 288 N.W.2d 874 (1980).

[3] The "*Allen* instruction," sometimes referred to as the "dynamite charge," originated in *Allen* v. *United States,* 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896). The United States Supreme Court, in upholding the conviction, summarized the trial court's instruction: "[I]f much the larger number were for conviction, a dissenting juror should consider whether

condoned similar attempts to resolve jury deadlocks. *State* v. *Ryerson,* 201 Conn. 333, 514 A.2d 337 (1986); *State* v. *O'Neill,* 200 Conn. 268, 511 A.2d 321 (1986); *State* v. *Smith,* 49 Conn. 376 (1881). On occasion, these efforts may be too heavyhanded and give the court undue influence over the deliberative process. See *People* v. *Gainer,* 19 Cal. 3d 835, 856–57, 566 P.2d 997, 139 Cal. Rptr. 861 (1977); see also S. Schulhofer, "Jeopardy and Mistrials," 125 U. Pa. L. Rev. 449, 487 (1977). It has been suggested that the acquittal instruction, particularly when given as a supplemental charge or after the jury has reached an impasse, has this affect as well. See, e.g., *People* v. *Ogden,* 35 Or. App. 91, 580 P.2d 1049 (1978). When it is given as part of the ini-

his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority." Id., 501. The instruction produced verdicts, and thus, was rapidly accepted.

In more recent years many courts have limited or abandoned the *Allen* instruction. The Third Circuit, Seventh Circuit and District of Columbia Courts of Appeals have held that the instruction is coercive for almost all purposes. See *United States* v. *Silvern,* 484 F.2d 879 (7th Cir. 1973); *United States* v. *Thomas,* 449 F.2d 1177 (D.C. Cir. 1971); *United States* v. *Fioravanti,* 412 F.2d 407 (3d Cir.), cert. denied sub nom. *Panaccione* v. *United States,* 396 U.S. 837, 90 S. Ct. 97, 24 L. Ed. 2d 88 (1969). Other federal courts of appeals have limited the instruction by preventing judges from giving it too early in deliberations; see *United States* v. *Contreras,* 463 F.2d 773 (9th Cir. 1972); by requiring an additional instruction that tells jurors not to surrender honest, conscientious beliefs; see *United States* v. *Mason,* 658 F.2d 1263 (9th Cir. 1981); or by not permitting judges to give it more than once. See *United States* v. *Bailey,* 480 F.2d 518 (5th Cir. 1973). It has been noted that nearly one half of the states disapproved *Allen*-type instructions, in whole or in part. See *People* v. *Gainer,* 19 Cal. 3d 835, 566 P.2d 997, 139 Cal. Rptr. 861 (1977) (citing cases from twenty-two other states and analyzing the debate over the *Allen* instruction); see generally 8A J. Moore, Federal Practice (2d Ed. 1993) § 31.04[2]; P. Marcus, "The *Allen* Instruction in Criminal Cases: Is the Dynamite Charge About To Be Permanently Defused?" 43 Mo. L. Rev. 613 (1978); comment, "An Argument for the Abandonment of the *Allen* Charge in California," 15 Santa Clara L. Rev. 939 (1975).

tial charge, the acquittal instruction precludes the jury from even discussing lesser included offenses until they agree to acquit on the charged offense. Jurors cannot then rectify their disagreements by compromising on the less serious offense that is composed of elements not disputed by the defendant or disagreed upon by the jurors. The acquittal instruction limits jury discretion, sets out a specific deliberation agenda and leaves jurors with no discretion or room for compromise. The result is often a hung jury followed by a mistrial. See discussion, infra.

"[W]here unanimity is required, the refusal of just one juror to acquit or convict on the greater charge prevents the rendering of a verdict on the lesser charge and causes a mistrial even in cases where the jury would have been unanimous on a lesser offense. Retrials, necessitated by hung juries, are burdensome to defendants, victims, witnesses and the court system itself. Successive trials can burden a defendant while allowing the State to benefit from 'dress rehearsals.' Additionally, structuring the jury's deliberations to unnecessarily increase the likelihood of hung juries places an enormous financial strain on an already heavily burdened criminal justice system. A second trial exacts a heavy toll on both society and defendants by helping to drain state treasuries, crowding court dockets, and delaying other cases while also jeopardizing the interests of defendants due to the emotional and financial strain of successive defenses." *State* v. *Labanowski*, 117 Wash. 2d 405, 420, 816 P.2d 26 (1991).

Although the available statistics are somewhat dated, reference to them is nevertheless useful. Between 5 percent and 12 percent of more than 200,000[4] crimi-

---

[4] The "Chicago Jury Project" study found hung juries occur in 5.5 percent of the cases studied. The study was based on court records, postdeliberation interviews, simulated cases before experimental juries, and

nal jury trials for felony offenses in the United States each year end in hung juries. These numerous stalemates leave the parties in a state of flux and create the impression to our citizens that the judicial system does not work.[5] As the court in *Labanowski* recognized, a decision to reprosecute carries a heavy cost to our treasuries. Additionally, second trials add to already crowded court dockets and cause delays in other cases. Defendants suffer the emotional and financial strain of successive defenses, and prosecutors, who may benefit from the earlier "dress rehearsal," may instead be left with an even more difficult case to prosecute successfully because of witnesses who quite naturally can die, disappear or forget their testimony.

The reasonable efforts instruction can improve jury deliberations and reduce the number of hung juries by, in effect, offering the jury more options. Research in two areas—increasing the number of options open to jurors and allowing nonunanimous decisions—support the conclusion that the reasonable efforts charge can aid juries in reaching valid and supported verdicts. Several studies have concluded that lesser included offense deliberations lead to compromise on a lesser included offense.[6] More options change the substance of delib-

the recording of a limited number of actual jury deliberations. This statistic, however, was based upon court records. H. Kalven & H. Zeisel, The American Jury (1966) p. 57.

In a second study, based on three years of results of trials in California's ten largest metropolitan areas, it was determined that juries hung 12.2 percent of the time. L. Flynn, "Does Justice Fail When the Jury is Deadlocked?" 61 Judicature 129, 130 (1977).

The number of jury trials per year for felonies is only a rough estimate derived from surveys of local courts' correspondence with state officials, projections and reports from judicial conferences. H. Kalven & H. Zeisel, supra, pp. 501–509.

[5] G. Jacobsohn, "The Unanimous Verdict: Politics and the Jury Trial," Wash. U. L.Q. 39, 56 (1977).

[6] See N. Vidmar, "Effects of Decision Alternatives On the Verdicts and Social Perceptions of Simulated Jurors," 22 J. Personality & Soc. Psychol-

eration and can lead to an otherwise unobtainable unanimity. The reasonable efforts instruction can serve to reduce the number of hung juries by promoting discussion on more ways to reach a verdict and by allowing the jury to agree on an offense with fewer elements. With the reasonable efforts instruction, "[t]he jurors favoring the lesser will not vote for the greater, but those who favor the greater will still vote for conviction when the jury moves on to consider the lesser; hence the deadlock is dissolved, and there is no mistrial." *Jones* v. *United States*, 544 A.2d 1250, 1253 (D.C. App. 1988). Moreover, just as some studies have concluded that changing the rule to allow nonunanimous final verdicts can reduce the number of hung juries,[7] so too can removing the requirement that jurors must unanimously acquit of the greater offense before they can consider the lesser offense.

In assessing the costs and benefits of the reasonable efforts instruction as opposed to the acquittal first instruction, reference to double jeopardy law, which

ogy 211 (1972) (In 54 percent of the mock trials, the jury acquitted when the choice in a homicide trial was guilty of first degree murder or not guilty. When the jury had four options, the jurors returned verdicts of first degree murder in 8 percent of the cases, second degree murder in 64 percent, manslaughter in 21 percent, and not guilty in 8 percent). Many others have replicated aspects of Professor Vidmar's study and found analogous results. See V. Hamilton, "Obedience and Responsibility: A Jury Simulation," 36 J. Personality & Soc. Psychology 126 (1978); Kaplan & Simon, "Latitude and Severity of Sentencing Option, Race of the Victim and Decisions of Simulated Jurors: Some Issues Arising from the Algiers Motel Trial," 7 Law & Soc'y Rev. 87 (1972); C. Roberts, M. Hoffman & W. Johnson, "Effects of Jury Deliberation On Verdicts and Social Perceptions of Simulated Jurors—Vidmar Revisited," 47 Perceptual & Motor Skills 119 (1978).

[7] See H. Kalven & H. Zeisel, The American Jury (1966) p. 461; see also M. Saks, Jury Verdicts (1977) p. 105; R. Foss, "Structural Effects in Simulated Jury Decision Making," 40 J. Personality & Soc. Psychology 1055 (1981). I do not advocate nonunanimous verdicts. Moreover, such a verdict would be unconstitutional. See Conn. Const., art. I, § 19, as amended in 1972; General Statutes § 54-82 (2); Practice Book § 867. There is nevertheless a lesson to be learned.

also involves the question of retrials, is helpful. The defendant's interest in concluding his confrontation with society is compelling. *Crist* v. *Bretz,* 437 U.S. 28, 35, 98 S. Ct. 2156, 57 L. Ed. 2d 24 (1978) ("[t]he reason . . . that jeopardy attaches when the jury is empaneled and sworn lies in the *need to protect the interest of an accused in retaining a chosen jury*" [emphasis added]). A second trial is permissible if the jury impaneled for the first trial is unequivocally unable to agree and has been discharged, even over the defendant's objection. *Downum* v. *United States,* 372 U.S. 734, 735–36, 83 S. Ct. 1033, 10 L. Ed. 2d 100 (1963); *State* v. *Van Sant,* 198 Conn. 369, 380, 503 A.2d 557 (1986). Although a hung jury is clearly a *proper* basis for a retrial, and satisfies the "manifest necessity"[8] test so that the defendant's double jeopardy protection is not violated, the result is nevertheless undesirable. The use of increasingly scarce judicial resources to retry a defendant whose case could have already been fairly resolved makes little sense. The defendant's right to have his trial completed by "his chosen tribunal" is zealously protected, but will be "subordinated to the public's interest in fair trials designed to end in *just judgments.*" (Emphasis added.) *Wade* v. *Hunter,* 336 U.S. 684, 689, 69 S. Ct. 834, 93 L. Ed. 974 (1949); *State* v. *Van Sant,* supra. "Manifest necessity will prompt a mistrial only when the interests of society outweigh the defendant's interest in completing his trial, and only if there is a high degree of

---

[8] "Manifest necessity" is a central component of double jeopardy law. " '[T]he law has invested Courts of justice with the authority to discharge a jury from giving *any* verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest *necessity* for the act, or the ends of public justice would otherwise be defeated. . . . To be sure, the power ought to be used with the *greatest* caution, under *urgent* circumstances, and for very plain and obvious causes . . . .' *United States* v. *Perez,* [22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165 (1824)]." (Emphasis added.) *State* v. *Van Sant,* 198 Conn. 369, 378, 503 A. 2d 557 (1986).

necessity to declare one." (Internal quotation marks omitted.) *State* v. *Daniels,* 207 Conn. 374, 394–95 n.12, 542 A.2d 306 (1988), cert. denied, 489 U.S. 1069, 109 S. Ct. 1349, 103 L. Ed. 2d 817 (1989). By providing the jury with the reasonable efforts instruction, the court can avoid the necessity to discharge a jury without any verdict.

Although juries are often instructed on lesser included offenses, the majority's imposition of the acquittal first rule effectively prohibits them from actually considering the lesser included offenses. This interferes with the jury's fact-finding function and reflects a lack of confidence in jurors and in their ability to handle discretion. This contradicts what the United States Supreme Court said in *Duncan* v. *Louisiana,* 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968). In holding that the sixth amendment right to a jury trial applied to state criminal trials, the court saw the jury as simultaneously fulfilling several roles. Not only does it find facts, but it is also there to "prevent oppression by the Government" and to serve as "an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." Id., 156.[9] The reasonable efforts charge provides structure to the deliberative process and allows

---

[9] Rarely do juries reach unmerited compromise. It is likely, however, that any verdict of guilty of a lesser included offense that was reached for reasons unrelated to the merits of the case was done in the name of equity. "A jury reflects the attitudes and mores of the community from which it is drawn. It lives only for the day and does justice according to its lights. The group of twelve, who are drawn to hear a case, makes the decision and melts away. It is not present the next day to be criticized. It is the one governmental agency that has no ambition. It is as human as the people who make it up. It is sometimes the victim of passion. But it also takes the sharp edges off a law and uses conscience to ameliorate a hardship. Since it is of and from the community, it gives the law an acceptance which verdicts of judges could never do." Justice William O. Douglas, The Anatomy of Liberty (1954).

the jury to perform its fact-finding function in an orderly fashion. See *State* v. *Gannon,* 75 Conn. 206, 229–30, 52 A. 727 (1902).

First, the jury is required to put its energy into attempting to reach a verdict on the greater offense. Only after reasonable efforts have been expended will the jury be allowed to proceed to consider the lesser included offense. Thus, undivided attention is first given by the jury to the greater offense with structure provided by the court. Everything the majority is and should be concerned about is provided, along with permission to use the discretion we tell jurors they possess. *State* v. *Allen,* 301 Or. 35, 717 P.2d 1178 (1986). The third and fourth prongs of the *Whistnant* test,[10] which was recently discussed by this court in *State* v. *Rasmussen,* 225 Conn. 55, 67, 621 A.2d 728 (1993), and *State* v. *Edwards,* 214 Conn. 57, 64, 570 A.2d 193 (1990), ensure the integrity of a conviction of a lesser included offense as one having been reached accurately and rationally.

The cases relied upon by the majority, which it concedes are not dispositive, merely confirm that a nonunanimous jury cannot render a finding of fact. *State* v. *Aparo,* 223 Conn 384, 388, 614 A.2d 401 (1992); *State* v. *Daniels,* supra, 388. The majority suggests, therefore, that without a unanimous acquittal of the greater offense, the defendant could be later retried for that greater offense when the conviction of the lesser included offense has been reversed on appeal.[11] I have two problems with the majority's approach.

---

[10] *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980).

[11] Although the majority does not specify that the second trial could only follow the defendant's successful appeal of the conviction of the lesser offense, it obviously recognizes the double jeopardy bar against successive prosecutions unless the defendant waived that protection by his appeal. See *State* v. *Lonergan,* 213 Conn. 74, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990).

First, the issue of whether the implied acquittal doctrine (that bars the state from reprosecuting a defendant on a charge of which he or she has been acquitted) would protect the defendant whose jury had not been given the unanimous acquittal charge is not before us, and whether this issue is raised by the state as a threat or notice of consequence, it nevertheless merits greater discussion than this vehicle affords. The second point concerning these cases, as well as *State* v. *Stankowski,* 184 Conn. 121, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981), is that they are of limited value in the context of the case before us because all three merely state the obvious—jury unanimity is required in order to be able to state that a particular fact has been found. The defendant concedes that with a reasonable efforts instruction, the only way to ensure when he is convicted of the lesser included offense that he has first been unanimously acquitted of the greater offense is by polling the jury. Practice Book § 869.[12] The unanimous acquittal charge provides automatic assurance that a defendant convicted of a lesser included offense was first unanimously acquitted of the greater. Although that kind of instruction addresses one area of concern, as stated above, it does not do enough to promote compromise, discourse and resolution.

Other courts have rejected the acquittal first instruction because it " 'improperly interferes with the jury's deliberations.' " *People* v. *Hurst,* 396 Mich. 1, 10, 238 N.W.2d 6 (1976); see, e.g., *Jones* v. *United States,*

---

[12] Practice Book § 869 provides: "After a verdict has been returned and before the jury have been discharged, the jury may be polled at the request of any party or upon the judicial authority's own motion. The poll shall be conducted by the clerk of the court by asking each juror individually whether the verdict announced is his verdict. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or they may be discharged."

supra; *State* v. *Ferreira*, 8 Haw. App. 1, 791 P.2d 407, cert. denied, 71 Haw. 668, 833 P.2d 901 (1990); *People* v. *Handley*, 415 Mich. 356, 329 N.W.2d 710 (1982); *State* v. *Thomas*, 40 Ohio St. 3d 213, 533 N.E.2d 286 (1988), cert. denied, 493 U.S. 826, 110 S. Ct. 89, 107 L. Ed. 2d 54 (1989); *State* v. *Allen,* supra. Several courts have endorsed an instruction that allows the jury to consider the defendant's guilt of the lesser included offense if they are unable to agree on guilt of the charged offense. *State* v. *Ferreira,* supra; *State* v. *Korbel,* 231 Kan. 657, 647 P.2d 1301 (1982); *People* v. *Handley,* supra; *People* v. *Hurst,* supra; *State* v. *Thomas,* supra; *State* v. *Allen,* supra; *State* v. *Labanowski,* supra. Others have allowed juries that report they are deadlocked on the greater offense to consider lesser offenses and have approved the reasonable efforts charge when the juries had received no prior pertinent instructions or when they had initially been instructed not to consider any lesser offenses until they first acquitted the defendant of the greater offense. *United States* v. *Roland,* 748 F.2d 1321, 1325–26 (2d Cir. 1984); *United States* v. *Smoot,* 463 F.2d 1221, 1222–24 (D.C. Cir. 1972); *Jones* v. *United States,* supra, 1254; *Carmichael* v. *United States,* 363 A.2d 302, 303–304 (D.C. App. 1976).

In its seminal decision, the Court of Appeals for the Second Circuit endorsed the modern trend to give juries the option of considering lesser offenses absent acquittal of the greater offense. "An instruction permitting the jury to move on to the lesser offense if after all reasonable efforts it is unable to reach a verdict on the greater . . . has advantages and disadvantages to both sides . . . . It facilitates the Government's chances of getting a conviction for something, although at the risk of not getting the one that it prefers. And it relieves the defendant of being convicted on the greater charge just because the jury wishes to avoid

a mistrial, but at the risk of a conviction on the lesser charge which might not have occurred if the jury, by being unable to agree to acquit on the greater, had never been able to reach the lesser." *United States* v. *Tsanas,* 572 F.2d 340, 346 (2d Cir.), cert. denied, 435 U.S. 995, 98 S. Ct. 1647, 56 L. Ed. 2d 84 (1978). Both the Eighth Circuit Court of Appeals; *Catches* v. *United States,* 582 F.2d 453 (8th Cir. 1978); and the Ninth Circuit Court of Appeals; *United States* v. *Jackson,* 726 F.2d 1466 (9th Cir. 1984); have approved this approach.

The Second Circuit Court of Appeals leaves the choice to the defendant as to whether he would prefer the "reasonable efforts" charge or the "acquittal first" instruction.[13] This was the approach endorsed by the majority in the Appellate Court opinion. *State* v. *Sawyer,* 29 Conn. App. 68, 74–76, 614 A.2d 471 (1992). I agree with the concurring opinion, however, that the reasonable efforts instruction is preferable and should be given in all matters in which there is one or more lesser included offenses. Id., 78–79 (*Freedman, J.,* concurring).

Both sides stand to give up something with a reasonable efforts charge. The state may lose its opportunity to obtain a conviction of the greater offense in those cases where the acquittal first instruction might have helped the majority voting to convict of the greater offense to prevail upon those members of the minority voting to acquit. See note, "Improving Jury Deliberations: A Reconsideration of Lesser Included Offense Instructions," 16 U. Mich. J.L. Ref. 561, 571 n.40 (1983). The defendant is equally disadvantaged because

---

[13] "Among the decisions from circuit courts that have adopted the optional approach are: *United States* v. *Jackson,* 726 F.2d 1466, 1469–70 (9th Cir. 1984); *Pharr* v. *Israel,* 629 F.2d 1278, 1282 (7th Cir. 1980); *Catches* v. *United States,* 582 F.2d 453, 459 (8th Cir. 1978); *Wright* v. *United States,* 588 A.2d 260, 262 (D.C. App. 1991)." *State* v. *Sawyer,* 29 Conn. App. 68, 73 n.4, 614 A.2d 471 (1992).

consideration of lesser included offenses, when the jury has not been able to acquit him first of the greater, might cause him to be convicted of that lesser offense, when he would otherwise be found not guilty. See, e.g., N. Vidmar, "Effects of Decision Alternating On Verdicts and Social Perceptions of Simulated Jurors," 22 J. Personality and Soc. Pyschology 211, 215 n.9 (1972) (finding that mock jurors with a choice of first degree murder or not guilty convicted in 46 percent of trials and acquitted in 54 percent while mock jurors allowed to consider second degree murder and manslaughter as choices in addition to guilty of first degree murder and not guilty acquitted in only 8 percent of cases). We have said that it is for the trial judge to decide whether to provide a lesser included offense instruction over objection when it believed it was in the interest of justice to do so. No one side has the exclusive right in this regard. *State* v. *Asherman,* 193 Conn. 695, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985).[14] Similarly, the decision to give the reasonable efforts charge does not belong to either side. Because I believe it is the fairer instruction, I would mandate it in each case.

It is important to remember that any jury chosen to decide a case was selected by both sides, and central to the instruction is the prerequisite that the jury must *first* attempt to reach a verdict on the greater offense, before it may even *consider* the lesser. This component is not left to the jury's discretion, it is mandated. More-

---

[14] As the state argued in *State* v. *Asherman,* 193 Conn. 695, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985), the importance of the state of mind of one accused of a homicide is "so great that a factfinder ought to be unrestricted, except by reasonable construction of the evidence, in deciding, upon the evidence presented, what crime was committed. Indeed, any other result would undermine both the defendant's and the state's right to a fair trial by limiting the factfinder's function of determining questions of fact." *State* v. *Asherman,* March Term, 1984, Rec. & Briefs, State's Brief, p.35.

over, "jurors are presumed to follow the instructions given by the judge." *State* v. *Williams,* 202 Conn. 349, 363–64, 521 A.2d 150 (1987). Unlike those jurisdictions that allow simultaneous consideration of the greater and lesser offenses, the instruction approved by the Appellate Court permits a jury to proceed to a lesser *only* after attempting to arrive at a verdict on the offense charged by the state. This stringent requirement guarantees that the charge selected by the prosecutor will receive the full and fair adjudication to which the state is entitled and protects society's interest in having one accused of a specific crime convicted of that crime when the proof so warrants. This method acknowledges the jury's exhaustive efforts to reach a verdict on the greater charge, and recognizes that the state is entitled to thorough consideration by the jury of the greatest charge. There is nothing about this approach that either "dilutes" the jury's role or gives "shortshrift" to the charged offense.

In this case, although the trial court provided lesser included offenses, I agree with the majority opinion of the Appellate Court that it is "an empty gesture" to provide the option when the court simultaneously set up a bar of the acquittal first requirement. *State* v. *Sawyer,* supra, 76. I also agree with the Appellate Court's conclusion that "[t]he acquittal first instruction given in this case deprived the defendant of having the jury consider manslaughter in the second degree just as effectively as if the court had declined to instruct on that charge. Because the trial court required that the jury overcome a preliminary hurdle—a unanimous acquittal on manslaughter in the first degree before it could consider the lesser included offense of manslaughter in the second degree—it deprived the defendant of his right to have the jury consider this lesser included offense." Id., 77.

Accordingly, I would affirm the judgment of the Appellate Court.