### STATE OF CONNECTICUT *v.* JAMES TATE
### (SC 16311)

Sullivan, C. J., and Borden, Norcott, Katz and Palmer, Js.

---

Argued March 13—officially released May 22, 2001

*Kent Drager*, senior assistant public defender, for the appellant (defendant).

*Eileen McCarthy Geel*, assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan*, state's attorney, and *Maureen Ornousky*, assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The dispositive issue in this interlocutory appeal is whether the trial court properly found, over the defendant's objection, the requisite manifest necessity to declare a mistrial despite its failure to inquire of the jurors, as requested by the defendant, whether they had reached a unanimous verdict on the charge of murder, or any of the lesser included offenses charged, before declaring that they were deadlocked. We conclude that the trial court's finding of manifest necessity was improper.

The record discloses the following pertinent facts. The defendant, James Tate, was charged with the intentional murder of the victim, Carol Chapman, in violation of General Statutes § 53a-54a.[1] At trial, the state claimed that the defendant intentionally had caused the death of the victim by manual strangulation. The defendant denied having caused the victim's death intentionally. He raised several weaknesses in the state's case and suggested, in accordance with his earlier statement to the police, that after they had smoked crack cocaine together, the victim started to choke and that he may

---

[1] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

have damaged the victim's neck accidentally while trying to help her.

In addition to the crime of murder as charged in the one count information, the trial court, *Nigro, J.*, instructed the jury, at the request of the state, on the lesser included offense of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3).[2] On its own motion, the trial court also instructed the jury on the lesser included offense of manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1),[3] and, at the defendant's request, the trial court also charged the jury on criminally negligent homicide in violation of General Statutes § 53a-58.[4]

As part of its charge, the trial court also advised the jury that it could not deliberate on a lesser included offense unless and until it first unanimously had acquitted the defendant on the greater charge. Specifically, following its instructions on murder, the trial court stated the following to the jury: "Under this rule of law [you may consider lesser included offenses] if and only if you find that the proof is not sufficient to justify conviction of the crime of murder specifically charged, you must then go on to consider whether it is sufficient to establish beyond a reasonable doubt the defendant's guilt of a lesser included crime as I shall define those crimes for you. Therefore, if you do find the defendant

---

[2] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[3] General Statutes § 53a-56 (a) provides in relevant part: "A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

[4] General Statutes § 53a-58 (a) provides: "A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person, except where the defendant caused such death by a motor vehicle."

guilty of the crime charged, that is, if you do find the state has proved all the elements of the crime of murder beyond a reasonable doubt, you need go no further in your deliberations and your verdict will be guilty as charged. If, however, you do not find him guilty of the specific crime charged, murder, you must then go on to consider whether he is guilty of any of the lesser included offenses that I'm going to describe, that is, manslaughter in the first degree by reckless indifference, manslaughter in the second degree or criminally negligent homicide."

After advising the jury of the elements of first degree manslaughter, the trial court stated: "If you have determined that the state has failed to prove the elements of the crime of murder . . . and also has failed to prove the elements of the crime of manslaughter in the first degree, you should then consider if the State has proven . . . the offense of manslaughter in the second degree." Thereafter, following its instructions on the elements of manslaughter in the second degree, the trial court told the jury: "Finally, if you find that the state has failed to prove the crime of manslaughter in the second degree, you should finally come to consider whether the state has proven the elements of the offense of criminally negligent homicide."

The trial court then provided the jury with the following summary of its prior instructions: "First, has the state proven the defendant guilty of the crime of murder as charged. Secondly, if the state has not proven the defendant guilty of the crime of murder, has the state proven the defendant guilty of the crime of manslaughter in the first degree. . . . [I]f the state has not proven the elements of the crime of manslaughter in the second degree by reason of reckless indifference, has the state proven the element of the crime of manslaughter in the second degree reckless indifference, first degree, second degree. And finally, if the state hasn't proved

any of those, has the state proven the elements of the crime of criminally negligent homicide. Or if the state hasn't proved anything, your verdict must be not guilty." Lastly, before allowing the jury to commence its deliberations, the trial court provided them with a written list summarizing the possible verdicts.[5]

On September 30, 1999, the third day of deliberations, the trial court received a note from the jury requesting

[5] The list provided the following:

"POSSIBLE VERDICTS

"1. If you find that the State has proven the elements of the crime of murder as charged in the information beyond a reasonable doubt, you need consider no further and your verdict would be: GUILTY OF THE CRIME OF MURDER AS CHARGED.

"2. If you find that the State has not proven the elements of the crime of murder as charged in the information beyond a reasonable doubt, you will consider if the State has proven all of the elements of the lesser included crime of Manslaughter in the First Degree.

"If you find that the State has proven all of the elements of the crime of Manslaughter in the First Degree, you need consider no further and your verdict would be: NOT GUILTY OF MURDER AS CHARGED BUT GUILTY OF MANSLAUGHTER IN THE FIRST DEGREE.

"3. If you find that the State has not proven the elements of the crime of murder as charged in the information beyond a reasonable doubt and has not proven the elements of the crime of Manslaughter in the First Degree beyond a reasonable doubt, you will consider if the State has proven all of the elements of the lesser included crime of Manslaughter in the Second Degree.

"If you find that the State has proven all of the elements of the crime of Manslaughter in the Second Degree beyond a reasonable doubt, you need consider no further and your verdict would be: NOT GUILTY OF MURDER AS CHARGED, BUT GUILTY OF MANSLAUGHTER IN THE SECOND DEGREE.

"4. If you find that the State has not proven the elements of the crime of murder as charged in the information beyond a reasonable doubt and has not proven the elements of the crime of Manslaughter in the First Degree beyond a reasonable doubt, and has not proven the elements of the crime of Manslaughter in the Second Degree beyond a reasonable doubt, you will consider if the State has proven all of the elements of the lesser included crime of Criminally Negligent Homicide.

"If you find that the State has proven all of the elements of the crime of Criminally Negligent Homicide beyond a reasonable doubt, you need consider no further and your verdict would be: NOT GUILTY OF MURDER AS CHARGED, BUT GUILTY OF CRIMINALLY NEGLIGENT HOMICIDE.

"5. If you find that the State has failed to prove beyond a reasonable

that the pertinent criminal statutes be provided to it in writing. The jury then sought clarification on how circumstantial evidence can be used to determine recklessness, an element of first and second degree manslaughter.[6] Thereafter, the jury sent another note indicating that it was unable to reach a unanimous verdict. In response, the trial court delivered a "Chip Smith" instruction[7] asking them to make another effort to reach a verdict. Before asking them to return to the jury deliberation room, the trial court provided the jury with a template for guidance. Specifically, the trial court stated: "Consider first the crime that's charged in the information, that is, the crime of murder. If you're unconvinced that the state has proven that count, that charge beyond a reasonable [doubt], then you should return a verdict—your decision would be not guilty of murder.

"If you find the state hasn't proven the murder, next consider whether or not the state has proven beyond a reasonable doubt the lesser included offense of manslaughter in the first degree. You have that explanation.

"If you all agree that the state hasn't proven that count, then consider the next count, the next lesser one, that is, manslaughter in the second degree.

doubt the crime of murder as charged and has failed to prove all the elements of any lesser included crimes, your verdict must be: NOT GUILTY."

[6] The note asking for clarification read: "Please explain the standards of proof that can be use[d] to conclude on the issue of 'Awareness' as referred to in page 12. In particular, please explain if and how circumstantial inference[s] can be use[d] to determine the defendant's state of mind." The trial court responded by instructing the jury, inter alia, on the definition of recklessness pursuant to General Statutes § 53a-3 (13).

[7] "A Chip Smith instruction reminds the jurors that they must act unanimously, while also encouraging a deadlocked jury to reach unanimity. See State v. Smith, 49 Conn. 376 (1881); see also 5 Connecticut Practice, D. Borden & L. Orland, Connecticut Criminal Jury Instructions (1986) § 4.8. State v. Tomasko, 242 Conn. 505, 508 n.6, 700 A.2d 28 (1997)." (Internal quotation marks omitted.) State v. Pare, 253 Conn. 611, 616 n.4, 755 A.2d 180 (2000).

"And if you have concluded that the state hasn't proven that count, then consider the last count of criminally negligent homicide.

"If none of you can come to an agreement on the first count and you can't come to a unanimous agreement on the second count and you can't come to a unanimous agreement on the third count and you can't come to a unanimous agreement on the final count, then, of course, you can't come to an agreement, a unanimous agreement. But I'm just going to ask you again to go back and see and make an effort to see if you can resolve this because you've spent a lot of time on it, all of you have. You've spent a lot of time discussing the issues and so on and it would require a second trial, if you come back and say you can't reach a result.

"If you feel the state hasn't proven the defendant guilty, then have no reluctance in returning a verdict of not guilty, but you have to be satisfied that the state hasn't proven the element of any of these crimes or if all of you can't come to a decision on these matters, then, of course, you just can't come to a decision.

"I'm going to ask you to make one more effort to see if you can resolve the situation."

Another note followed, again reflecting the jury's inability to reach a unanimous verdict. Concluding that there was no point to bringing the jury back for another Chip Smith instruction, the trial court determined that it should discharge the jury.

The defendant then requested the court to inquire of the jury as to whether it had reached a partial verdict. Specifically, the defendant argued that, consistent with *State* v. *Sawyer*, 227 Conn. 566, 630 A.2d 1064 (1993),[8]

---

[8] "In *State* v. *Sawyer*, [supra, 227 Conn. 583], we determined that, to assist the jury in making the transition from consideration of the greater offense to consideration of one or more lesser included offenses, the jury must receive an acquittal first instruction. Only after it has confronted and unanimously completed the difficult task of deciding the guilt or innocence of the accused as to the charged offense should the jury consider lesser included

and pursuant to the trial court's instructions, the jury could not have deliberated regarding first degree manslaughter until it had acquitted him first of the murder charge, and it could not have deliberated regarding second degree manslaughter until it had acquitted him first of first degree manslaughter. On the basis of the earlier note regarding the clarification of recklessness, an element that pertains both to first and second degree manslaughter, the defendant claimed that the jury unanimously had agreed that he was not guilty of murder, and that perhaps he was not guilty of either first or second degree manslaughter. Relying on Practice Book § 42-29,[9] *State* v. *Aparo*, 223 Conn. 384, 391, 614 A.2d 401 (1992), cert. denied, 507 U.S. 972, 113 S. Ct. 1414, 122 L. Ed. 2d 785 (1993), and *State* v. *Goodman*, 35 Conn. App. 438, 447, 646 A.2d 879, cert. denied, 231 Conn. 940, 653 A.2d 824 (1994), the defendant contended that the trial court had the authority to obtain a partial verdict, and that, if the jury indeed had acquitted him of murder, as he had argued, the state would be precluded from retrying him under the double jeopardy protection afforded under both the state and federal

offenses. Anything less dilutes the right of the state and the defendant to have the jury give its undivided attention and most serious deliberations to the offense with which the defendant is charged . . . . Id." (Internal quotation marks omitted.) *State* v. *Abdalaziz*, 248 Conn. 430, 435–36, 729 A.2d 725 (1999).

[9] Practice Book § 42-29 provides: "Verdict; Return of Verdict

"The verdict shall be general unless otherwise directed by the judicial authority, but if the judicial authority instructs the jury regarding the defense of mental disease or defect, the jury, if they so find, shall declare the finding in their verdict. The verdict shall be unanimous and shall be announced by the jury in open court. If there are two or more defendants, the jury may return a verdict with respect to any defendant as to whom they agree. The defendant, if found not guilty of the offense charged, may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein, if the attempt is an offense."

constitutions.[10] The trial court denied the defendant's request, concluding that the record as to whether the jury had reached a verdict was ambiguous, and that, because this case did not involve multiple counts, there was no authority to support his position. The defendant responded that, even if the record had been ambiguous, the trial court had the *ability* and the *obligation* to clarify the record by asking whether the jury had reached a partial verdict. Nevertheless, the trial court declared a mistrial and discharged the jury.

On December 1, 1999, the defendant filed an amended motion to dismiss, outlining the aforementioned procedural history. He claimed that the trial court improperly had declared a mistrial in the absence of manifest necessity. Additionally, the defendant asserted, on the basis of attached affidavits from seven of the twelve jurors, that, had the trial court granted his request for a partial verdict, the jury would have reported verdicts of not guilty as to the crimes of murder and first degree manslaughter. According to the affidavits, the jurors were deadlocked only on the offense of second degree manslaughter.[11] The affidavits aside, in the absence of the

---

[10] The right not to be twice put in jeopardy is a fundamental guarantee of both the federal constitution; U.S. Const., amend. V; see *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969) (federal double jeopardy clause applicable to states); and the state constitution. See, e.g., *State* v. *Nixon*, 231 Conn. 545, 550, 651 A.2d 1264 (1995) (right to protection against double jeopardy is implicit in due process guarantees of state constitution).

[11] Affidavits from seven of the twelve jurors contained the following pertinent information:

"AFFIDAVIT

"I, [Juror ID #SST-2000-158-2000000297], having been duly sworn, hereby depose and say . . .

"2. I was a juror in the murder trial of *State of Connecticut* v. *James Tate.*

"3. Early on in our deliberations, we the jury unanimously agreed that the defendant was not guilty of the charge of murder.

"4. We the jury then proceeded to consider the lesser included offenses.

"5. In the last vote taken in an attempt to reach a verdict, approximately half of the jurors vote to return a verdict of guilty to the charge of manslaughter in the second degree, one juror voted to find Mr. Tate not guilty of any

inquiry sought by the defendant, the defendant main-

charge, and the remaining jurors voted to return a verdict of guilty to the charge of criminally negligent homicide. . . ."

"AFFIDAVIT

"I, [Juror ID #SST-2000-057-1999018010], having been duly sworn, hereby depose and say . . .

"2. I was a juror in the murder trial of *State of Connecticut* v. *James Tate* and participated with my fellow jurors in deliberations in that case.

"3. During our deliberations, we the jury voted and unanimously agreed that the defendant was not guilty of the charge of murder and that he was not guilty of the charge of manslaughter in the first degree.

"4. In the last vote taken in an attempt to reach a verdict, approximately half of the jurors voted to return a verdict of guilty to the charge of manslaughter in the second degree, one juror voted to find Mr. Tate not guilty of any charge but indicated a willingness to return a verdict of guilty to the charge of criminally negligent homicide, and the balance of the jury panel voted to convict Mr. Tate of the charge of criminally negligent homicide. . . ."

"AFFIDAVIT

"I, [Juror ID #SST-2000-103-1999021806], having been duly sworn, depose and say . . .

"2. I was the jury foreperson in the murder trial of *State of Connecticut* v. *James Tate*.

"3. I participated with my fellow jurors in deliberations in that case and took notes over the course of those deliberations and I have carefully reviewed those notes.

"4. On Wednesday, the day following closing arguments, we the jury voted and unanimously agreed that the defendant was not guilty of the charge of murder.

"5. We the jury then proceeded to consider the lesser included offenses.

"6. In the last vote taken in an attempt to reach a verdict, five jurors voted to return a verdict of guilty to the charge of manslaughter in the second degree and seven jurors voted to convict Mr. Tate of the charge of criminally negligent homicide. At the time of that vote none of the jurors voted for a conviction of manslaughter in the first degree. . . ."

"AFFIDAVIT

"I, [Juror ID #SST-2000-057-1999023050], having been duly sworn, depose and say . . .

"2. I was a juror in the murder trial of *State of Connecticut* v. *James Tate*.

"3. Early on in our deliberations, we the jury determined that the state had not proved the charge of murder and, therefore, in accordance with the trial judge's instructions, we then proceeded to consider the lesser included offenses.

"4. In the course of our deliberations on the lesser included offenses, we the jury concluded that the state had not proved all of the elements of manslaughter in the first degree and, accordingly, we then proceeded to

tained that there had been no manifest necessity for declaring a mistrial.

consideration of the remaining lesser included offenses.

"5. In the last vote taken in an attempt to reach a verdict, approximately half of the jurors voted to return a verdict of guilty to the charge of manslaughter in the second degree, one juror voted to find Mr. Tate not guilty of any charge but indicated some willingness to reconsider a conviction of criminally negligent homicide, and the remaining jurors voted to return a verdict of guilty to the charge of criminally negligent homicide. . . ."

"AFFIDAVIT

"I, [Juror ID #SST-2000-057-1999023457], having been duly sworn, depose and say . . .

"2. I was a juror in the murder trial of *State of Connecticut* v. *James Tate.*

"3. During the course of the jury's deliberations, after discussing the murder charge, we the jury proceeded to consider the lesser included offenses.

"4. In the last vote taken in an attempt to reach a verdict, six jurors voted to return a verdict of guilty to the charge of manslaughter in the second degree, five jurors voted to return a verdict of guilty to the charge of criminally negligent homicide and one juror voted to find Mr. Tate not guilty of any charge. At the time of that vote, we the jury unanimously agreed that the defendant was not guilty of the lesser included offense of manslaughter in the first degree. . . ."

"AFFIDAVIT

"I, [Juror ID #SST-2000-157-1999017434], having been duly sworn, hereby depose and say . . .

"2. I was a juror in the murder trial of *State of Connecticut* v. *James Tate* and participated with my fellow jurors in deliberations in that case.

"3. On the morning of our first full day of deliberations (Wednesday), we the jury voted and unanimously agreed that the defendant was not guilty of the charge of murder.

"4. We the jury then proceeded to consider the lesser included offenses.

"5. In the last vote taken in an attempt to reach a verdict, six of the jurors voted to return a verdict of guilty to the charge of manslaughter in the second degree, five jurors voted to convict Mr. Tate of the charge of criminally negligent homicide, and one juror voted to find Mr. Tate not guilty of any charge. At the time of that vote, we the jury unanimously agreed that the defendant was not guilty of the lesser included offense of manslaughter in the first degree. . . ."

"AFFIDAVIT

"I, [Juror ID #SST-2000-103-2000001100], having been duly sworn, hereby depose and say . . .

"2. I was a juror in the murder trial of *State of Connecticut* v. *James Tate* and participated with my fellow jurors in deliberations in that case.

"3. Early on in our deliberations, we the jury voted and unanimously

The trial court denied the defendant's amended motion to dismiss. In its memorandum of decision, the court first pointed to its instructions to the jury authorizing it, in accordance with *State* v. *Sawyer*, supra, 227 Conn. 566, to consider a lesser included offense only after it had acquitted the defendant of the greater offense. The court concluded nonetheless that "there was no basis in assuming that the jury had resolved the issue of the crime of murder just because of the request for clarification [of an element in the manslaughter charges], especially since the note appeared to be from a juror other than the foreperson." Additionally, the trial court noted that, because "the only crime charged in the information was that of murder, there was no basis for such an inquiry since the jury had been instructed not to address the lesser charges unless it found the state had failed to prove the crime of murder, in which event it was to return a verdict of not guilty of murder." The jury's failure to report a partial verdict as to the crime of murder apparently led the trial court to conclude that the jury had not reached a verdict as to that charge. Although later in its memorandum of decision the trial court recognized that it was reasonably possible that the jury had been misled by its *Sawyer* instructions, the trial court nevertheless denied the defendant's amended motion to dismiss, concluding that, because the jury ultimately indicated that it was

agreed that the defendant was not guilty of the charge of murder.

"4. We the jury then proceeded to consider the lesser included offenses.

"5. In the last vote taken in an attempt to reach a verdict, approximately half of the jurors voted to return a verdict of guilty to the charge of manslaughter in the second degree, one juror voted to find Mr. Tate not guilty of any charge but indicated a willingness to return a verdict of guilty to the charge of criminally negligent homicide, and the balance of the jury panel voted to convict Mr. Tate of the charge of criminally negligent homicide. At the time of that vote, we the jury unanimously agreed that the defendant was not guilty of the lesser included offense of manslaughter in the first degree. . . ."

unable to reach a verdict, the court had had a reasonable basis for declaring a mistrial.

The defendant appealed from the denial of his motion to dismiss to the Appellate Court, claiming that the trial court had violated his rights against double jeopardy when, by rejecting his request to inquire of the jury whether it had reached a partial verdict, the trial court improperly declared a mistrial in the absence of manifest necessity. Accordingly, he contends that the trial court improperly denied his motion to dismiss. The defendant also claimed that the trial court improperly had denied his motion to dismiss on double jeopardy grounds by failing to consider the affidavits that demonstrated that the jurors, in fact, had reached a verdict acquitting him of murder and first degree manslaughter. We agree with the defendant that the trial court improperly declared a mistrial in the absence of manifest necessity.

I

Following our transfer of the appeal to this court, the state filed a motion to dismiss, claiming that this court lacks subject matter jurisdiction to consider this interlocutory appeal. Because the order from which the defendant has appealed is not a final judgment, it is an interlocutory proceeding, and is appealable in two narrowly defined circumstances, neither of which, according to the state, is satisfied in this case. Although we agree that the defendant's appeal from the trial court's denial of his motion to dismiss is an interlocutory order, we disagree with the state's contention that this order is not appealable.

There is a small class of cases that meets the test of being effectively unreviewable on appeal from a final judgment and therefore, is subject to interlocutory review. The paradigmatic case in this group involves the right against double jeopardy. *State* v. *Moeller*, 178

Conn. 67, 420 A.2d 1153, cert. denied, 444 U.S. 950, 100 S. Ct. 423, 62 L. Ed. 2d 320 (1979). Because jeopardy attaches at the commencement of trial, to be vindicated at all, a colorable double jeopardy claim must be addressed by way of interlocutory review. The right not to be tried necessarily falls into the category of rights that can be enjoyed only if vindicated prior to trial, and, consequently, falls within the second prong of *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983) (otherwise interlocutory order appealable in two circumstances: "[1] where the order or action terminates a separate and distinct proceeding, or [2] where the order or action so concludes the rights of the parties that further proceedings cannot affect them"). See *Shay* v. *Rossi*, 253 Conn. 134, 167, 749 A.2d 1147 (2000) (because criminal defendant's constitutional double jeopardy right includes right not even to be tried for same offense, denial of motion to dismiss criminal charges, filed on basis of colorable claim of double jeopardy, is immediately appealable final judgment under second prong of *Curcio*).

We have entertained several interlocutory appeals from denials of motions to dismiss based on double jeopardy claims. See *In re Juvenile Appeal (85-AB)*, 195 Conn. 303, 305–309, 488 A.2d 778 (1985); *State* v. *Aillon*, 189 Conn. 416, 425, 456 A.2d 279, cert. denied, 464 U.S. 837, 104 S. Ct. 124, 78 L. Ed. 2d 122 (1983); *State* v. *Seravalli*, 189 Conn. 201, 206 n.6, 455 A.2d 852, cert. dismissed, 461 U.S. 920, 103 S. Ct. 2076, 77 L. Ed. 2d 291 (1983). That constitutional right not only protects against being twice punished but also "is a guarantee against being twice put to trial for the same offense." *Abney* v. *United States*, 431 U.S. 651, 661, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977). The only real question is whether the double jeopardy claim is colorable.

For a claim to be colorable, the defendant need not convince the trial court that he necessarily will prevail;

he must demonstrate simply that he *might* prevail. As our discussion of the substantive issue in part II of this opinion demonstrates, the defendant's claim satisfies the test. Accordingly, we conclude that we have jurisdiction to consider this interlocutory appeal.

## II

### A

We begin with a brief review of our double jeopardy jurisprudence. When a criminal defendant objects to the declaration of a mistrial, as he did in the case before us, and the mistrial is declared for reasons that the trial court properly concluded amounted to "manifest necessity," his right to have his trial completed by his chosen tribunal is no longer protected and the double jeopardy clause does not bar a second trial. *Illinois* v. *Somerville*, 410 U.S. 458, 463, 93 S. Ct. 1066, 35 L. Ed. 2d 425 (1973). In construing the double jeopardy clause of the United States constitution in the context of a declaration of a mistrial over a defendant's objection, the seminal decision is *United States* v. *Perez*, 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165 (1824). That case enjoys continued vitality. See *Arizona* v. *Washington*, 434 U.S. 497, 506, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978); *United States* v. *Dinitz*, 424 U.S. 600, 606–607, 96 S. Ct. 1075, 47 L. Ed. 2d 267 (1976); *Illinois* v. *Somerville*, supra, 461.

Justice Story, writing for the United States Supreme Court in *Perez*, supra, set forth standards for determining when to order a retrial after a mistrial has been declared over a defendant's objection. "We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to

define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office." *United States* v. *Perez*, supra, 22 U.S. 580.

The United States Supreme Court posits that "[t]he words 'manifest necessity' appropriately characterize the magnitude of the prosecutor's burden." *Arizona* v. *Washington*, supra, 434 U.S. 505. Because of the importance of the defendant's right to have his trial concluded by a particular tribunal, "the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant." Id. With respect to construction of the terms "manifest necessity," a "high degree" of necessity is required before a conclusion may be reached that a mistrial is appropriate, and it is apparent that whether that high degree has been reached is to be answered more easily in some cases than in others. Id., 506–507. Manifest necessity is not amenable to a precise formulation or mechanical application because the high degree of necessity mandated by that phrase can be found in a variety of circumstances. Id.

"A reviewing court looks for a manifest necessity by examining the entire record in the case without limiting itself to the actual findings of the trial court. *Grooms* v. *Wainwright*, 610 F.2d 344 (5th Cir. 1980), cert. denied,

445 U.S. 953, 100 S. Ct. 1605, 63 L. Ed. 2d 789 (1980)."
*Abdi* v. *Georgia*, 744 F.2d 1500, 1503 (11th Cir. 1984),
cert. denied, 471 U.S. 1006, 105 S. Ct. 1871, 85 L. Ed.
2d 164 (1985); see *Arizona* v. *Washington*, supra, 434
U.S. 515–17; *Wade* v. *Hunter*, 336 U.S. 684, 691–92, 69
S. Ct. 834, 93 L. Ed. 974 (1949). "It is the examination
of the propriety of the trial court's action against the
backdrop of the record that leads to the determination
[of] whether, in the context of a particular case, the
mistrial declaration was proper. Given the constitution-
ally protected interest involved, reviewing courts must
be satisfied, in the words of Justice Story in *Perez*, that
the trial judge exercised 'sound discretion' in declaring
a mistrial." *State* v. *Van Sant*, 198 Conn. 369, 379, 503
A.2d 557 (1986).

## B

Against this background, we must determine whether
the trial court properly declared a mistrial or whether,
by failing to ask the jurors if they had reached a unani-
mous partial verdict on any of the greater offenses
before them, as requested by the defendant, the court
lacked the required manifest necessity for declaring a
mistrial on the greater offenses. We begin with this
court's decision in *State* v. *Sawyer*, supra, 227 Conn.
566.

In *Sawyer*, we determined that, in order to assist
the jury in making the transition from considering the
greater offense to one or more lesser included offenses,
the jury must be given an "acquittal first" instruction.
Id., 583. "Only after it has confronted and unanimously
completed the difficult task of deciding the guilt or
innocence of the accused as to the charged offense
should the jury consider lesser included offenses. Any-
thing less dilutes the right of the state and the defendant
to have the jury give its undivided attention and most
serious deliberations to the offense with which the

defendant is charged . . . ." Id. Although the jury in this case, as is often the case, was instructed on lesser included offenses, the imposition of the acquittal first rule effectively prohibited it from actually considering the lesser included offenses unless and until it had arrived at a unanimous verdict of acquittal on the crime of murder. This approach makes Connecticut what is termed a "hard transition" acquittal first jurisdiction.[12]

This scheme of acquittal on the greater charge as a condition precedent to deliberation of charges for offenses requiring a lesser element, in this case, a lesser specific mental state, requires the jury to reach a partial verdict. See, e.g., *Rookey* v. *State*, 70 Conn. 104, 106–107, 38 A. 911 (1897) ("[t]he verdict in a criminal case is

---

[12] As we recognized in *State* v. *Sawyer*, supra, 227 Conn. 577 n.8, there are several jurisdictions that have adopted the hard transition approach. See, e.g., *United States* v. *Moccia*, 681 F.2d 61 (1st Cir. 1982); *Lindsey* v. *State*, 456 So. 2d 383, 387 (Ala. Crim. App. 1983), aff'd, 456 So. 2d 393 (Ala. 1984), cert. denied, 470 U.S. 1023, 105 S. Ct. 1384, 84 L. Ed. 2d 403 (1985); *State* v. *Wussler*, 139 Ariz. 428, 430, 679 P.2d 74 (1984); *Lamar* v. *State*, 243 Ga. 401, 403, 254 S.E.2d 353, appeal dismissed, 444 U.S. 803, 100 S. Ct. 23, 62 L. Ed. 2d 16 (1979); *State* v. *Van Dyken*, 242 Mont. 415, 425–26, 791 P.2d 1350, cert. denied, 498 U.S. 920, 111 S. Ct. 297, 112 L. Ed. 2d 251 (1990); *People* v. *Boettcher*, 69 N.Y.2d 174, 181–83, 505 N.E.2d 594, 513 N.Y.S.2d 83 (1987); *State* v. *Wilkins*, 34 N.C. App. 392, 398–401, 238 S.E.2d 659, cert. denied, 294 N.C. 187, 241 S.E.2d 516 (1977); *Commonwealth* v. *Hart*, 388 Pa. Super. 484, 499-500, 565 A.2d 1212 (1989), appeal denied, 525 Pa. 642, 581 A.2d 569 (1990); *State* v. *Clayton*, 658 P.2d 624, 627 (Utah 1983); *State* v. *McNeal*, 95 Wis. 2d 63, 68, 288 N.W.2d 874 (1980).

Other jurisdictions endorse either the optional approach or the reasonable efforts instruction. See, e.g., *United States* v. *Jackson*, 726 F.2d 1466, 1469–70 (9th Cir. 1984); *Pharr* v. *Israel*, 629 F.2d 1278, 1282 (7th Cir. 1980), cert. denied, 449 U.S. 1088, 101 S. Ct. 880, 66 L. Ed. 2d 815 (1981); *Catches* v. *United States*, 582 F.2d 453, 459 (8th Cir. 1978); *People* v. *McGregor*, 635 P.2d 912, 914 (Colo. App. 1981); *Wright* v. *United States*, 588 A.2d 260, 262 (D.C. App. 1991); *State* v. *Ferreira*, 8 Haw. App. 1, 4–5, 791 P.2d 407, cert. denied, 71 Haw. 668, 833 P.2d 901 (1990); *State* v. *Korbel*, 231 Kan. 657, 661, 647 P.2d 1301 (1982); *People* v. *Handley*, 415 Mich. 356, 358–60, 329 N.W.2d 710 (1982); *State* v. *Thomas*, 401 Ohio St. 3d 213, 218–20, 533 N.E.2d 286 (1988), cert. denied, 493 U.S. 826, 110 S. Ct. 89, 107 L. Ed. 2d 54 (1989); *Tarwater* v. *Cupp*, 304 Or. 639, 645, 748 P.2d 125 (1988); *State* v. *Labanowski*, 117 Wash. 2d 405, 414, 816 P.2d 26 (1991).

either general, on the whole charge, or partial, as to a part of the charge [as when the accused is convicted on one count of an indictment, or upon one part of a count capable of division, or of an offense of inferior degree included in the accusation of a higher crime]; or special, by which the facts of the case are put upon the record"). This partial verdict reflects the jury's unanimous determination that the state has failed to prove the defendant guilty beyond a reasonable doubt of the charged offense. Therefore, "[t]he ends of justice require that the State be barred from relitigating [that crime] because [a]llowing a second jury to reconsider the very issue upon which the defendant has prevailed . . . implicates concerns about the injustice of exposing a defendant to repeated risks of conviction for the same conduct, and to the ordeal of multiple trials, that lie at the heart of the double jeopardy clause." (Internal quotation marks omitted.) *State* v. *James*, 247 Conn. 662, 675–76, 725 A.2d 316 (1999); *State* v. *Aparo*, supra, 223 Conn. 392.

## C

The trial court in the present case indicated that it did not believe it had the authority to accept a partial verdict when the jury unanimously acquits a defendant of the greater charge and thereafter reaches a deadlock only on a lesser included offense.[13] Jurisdictions that

---

[13] A trial court may receive a partial verdict when several defendants are involved; see Practice Book § 42-29; and where there are several counts pending against one defendant. See, e.g., *State* v. *Aparo*, supra, 223 Conn. 388–92 (where jury acquitted accused of accessory to intentional murder but deadlocked on charge of conspiracy to commit murder). The fact that the defendant in the present case was charged in a one count information as opposed to a multicount information should not warrant a different outcome. Our research reveals several jurisdictions in which the fact that a partial verdict is acceptable when an accused has been charged with more than one count also resolves the question of whether a partial verdict is allowed when the defendant has been charged with only one count and the jury is instructed thereafter on lesser included offenses. See, e.g., *United States* v. *Chestaro*, 197 F.3d 600, 608–609 (2d Cir. 1999) (noting that partial verdict on some counts and deadlock on other counts is in principle "no

have adopted the "soft transition" approach[14] occasionally have expressed reluctance to accept a partial verdict because it impedes the jury's ability to move from consideration of the greater offense to the lesser offense as a means of seeking compromise and without actually having acquitted the accused of the greater offense.

different [from] where the jury acquits the defendant of the greater offense but is deadlocked on a lesser included offense"); *United States* v. *Gooday*, 714 F.2d 80, 83 (9th Cir. 1983), cert. denied, 468 U.S. 1217, 104 S. Ct. 3587, 82 L. Ed. 2d 884 (1984) (holding that for purposes of accepting partial verdicts "lesser included offenses should be treated as if they had been specified in separate counts of the indictment . . . [and thus the accused's] acquittal [by the first jury] on the indictment's first degree murder count does not preclude retrial on the three lesser included offenses on which the [original] jury was [deadlocked]"); *Stone* v. *Superior Court*, 31 Cal. 3d 503, 517–18, 646 P.2d 809, 183 Cal. Rptr. 647 (1982) (where partial verdict allowed on multiple counts such partial verdict must also be allowed when jury is given lesser offenses on single count; noting that because prosecutors may choose to charge lesser offenses as separate counts or leave it to judge to instruct on lesser offenses as part of single count, "[i]t would be anomalous to formulate a rule that prevents a trial court from receiving a partial verdict on a greater offense on which the jury [has acquitted] merely because the prosecutor elected to charge only that offense, and left it to the court to instruct on . . . lesser included offense[s]"); see also note, "Acceptance of Partial Verdicts as a Safeguard Against Double Jeopardy," 53 Fordham L. Rev. 889, 898 (1985) ("Lesser offenses can be treated procedurally in the same manner as multiple offenses. Acceptance of a partial verdict of acquittal on murder in the first degree when the jury [thereafter] deadlocks on the second degree charge is indistinguishable from receiving a verdict of not guilty on robbery when the jury cannot agree on the accompanying kidnapping charge.").

Indeed, it would be anomalous to formulate a rule that prevents a trial court from receiving a partial verdict on a greater offense on which the jury clearly favors acquittal merely because the state has chosen to charge only that offense, leaving the issue of lesser offenses to the trial court. The substantive rights involved in this case should not turn on the formality of whether the defendant was charged in separate counts with the greater offense and the lesser included offense, or in a single count with only the greater offense. See *Green* v. *United States*, 355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957).

[14] This approach allows the jury, in the absence of a unanimous acquittal of the greater offense, to consider the lesser included offenses. The jury is instructed that they may consider the lesser offenses after they have used reasonable efforts to reach a unanimous verdict on the greater offense. See footnote 12 of this opinion.

See *People* v. *Hickey*, 103 Mich. App. 350, 351–52, 303 N.W.2d 19 (1981). This concern arises due to the tentative nature of the jury's transition between greater and lesser offenses. Where, however, the jury "has confronted and unanimously completed the difficult task of deciding the guilt or innocence of the accused as to the charged offense"; *State* v. *Sawyer*, supra, 227 Conn. 583; those same concerns do not surface.

The defendant has directed us to cases from several jurisdictions authorizing trial courts to accept a partial verdict of acquittal on a greater offense even when the jury is deadlocked on a lesser included offense. See, e.g., *United States* v. *Gooday*, 714 F.2d 80, 83 (9th Cir. 1983), cert. denied, 468 U.S. 1217, 104 S. Ct. 3587, 82 L. Ed. 2d 884 (1984); *Andrade* v. *Superior Court*, 183 Ariz. 113, 115–16, 901 P.2d 461 (1995); *People* v. *Kettler*, 112 Ill. App. 3d 1061, 1069, 446 N.E.2d 550 (1983), cert. denied, 465 U.S. 1031, 104 S. Ct. 1297, 79 L. Ed. 2d 697 (1984); *Commonwealth* v. *Ray*, 982 S.W.2d 671, 673–74 (Ky. App. 1998); *People* v. *Booker*, 208 Mich. App. 163, 173–75, 527 N.W.2d 42 (1994); *State* v. *Halsey*, 232 Neb. 658, 663, 441 N.W.2d 877 (1989); *Oliver* v. *Justices of New York Supreme Court*, 36 N.Y.2d 53, 56–57, 324 N.E.2d 348, 364 N.Y.S.2d 874 (1974); *Dissell* v. *Adams*, 115 App. Div. 2d 1006, 1008, 497 N.Y.S.2d 570 (1985); *State* v. *Walker*, Docket No. CR86060811, 1987 Ohio App. LEXIS 8939, *6 (September 23, 1987); *State* v. *Grabowski*, 644 A.2d 1282, 1284 (R.I. 1994); *State* v. *Seagroves*, 691 S.W.2d 537, 540–41 (Tenn. 1985); *State* v. *Russell*, 101 Wash. 2d 349, 351–52, 678 P.2d 332 (1984), cert. denied sub nom. *Rolfs* v. *Russell*, 501 U.S. 1260, 111 S. Ct. 2915, 115 L. Ed. 2d 1078 (1991). In jurisdictions with an acquittal first requirement, where the jury "has confronted and unanimously completed the difficult task of deciding the guilt or innocence of the accused as to the charged offense"; *State* v. *Sawyer*, supra, 227 Conn. 583; but is deadlocked with respect to the lesser

included offense, the trial court is required to accept a partial verdict. See *State* v. *Walker*, supra, 1987 Ohio App. LEXIS 8939, *6 (where jury able to reach verdict on greater charge but deadlocked on lesser charge, jury allowed to render verdict on greater offense on which it does agree; such partial verdict bars retrial on acquitted greater offense but not on lesser offenses on which jury deadlocked); see also *Whiteaker* v. *State*, 808 P.2d 270, 274 (Alaska 1991) ("where the jury has unanimously decided [on a verdict on the greater] charge but is deadlocked on the lesser included offenses," accused "entitled" to have partial verdict accepted by trial court). Thereafter, jeopardy attaches "to those [greater] offenses upon which the jury has unanimously agreed to acquit, even if [the jury] is unable to reach a final verdict as to any of the lesser included offenses." *State* v. *Castrillo*, 90 N.M. 608, 611, 566 P.2d 1146 (1977), overruled in part on other grounds, *State* v. *Wardlow*, 95 N.M. 585, 587, 624 P.2d 527 (1981) (affirming rule of *Castrillo*, which "requires that where a jury is dead-locked on a charge involving [lesser] included offenses, the trial court must determine whether the jury" has unanimously reached verdict on any of greater offenses and, if so, court must accept that partial verdict).

Therefore, two principles are at play in this analysis. First, pursuant to the trial court's instructions as dic-tated by *Sawyer*, the jury must first acquit the defendant of the greater offense before it is permitted to consider the lesser offense. Second, it is a fundamental principle of the constitutional prohibition against double jeop-ardy that a defendant may not be retried for an offense of which he has been acquitted. See footnote 10 of this opinion. Therefore, we are persuaded that *Sawyer* and the guarantees provided by the double jeopardy clause dictate that: (1) it is a valid verdict for the jury to acquit the accused of a greater offense and only thereafter to reach a deadlock on a lesser offense; (2) such a valid

verdict must be accepted; and, finally, (3) the failure to accept that valid verdict would violate the constitutional protection against double jeopardy. See note, "Acceptance of Partial Verdicts as a Safeguard Against Double Jeopardy," 53 Fordham L. Rev. 889, 901 (1985) ("[w]hen the jury reaches a unanimous decision of acquittal on a greater crime but deadlocks on a lesser offense, failure to receive a partial verdict on the greater crime violates the defendant's double jeopardy protection by allowing the state to reprosecute him for an offense of which he has been acquitted").[15]

## D

Because the trial court in the present case did not regard itself as authorized to accept a partial verdict, it never informed the jury that it could or should return a partial verdict on a greater offense while continuing to deliberate on a lesser offense. Nor did the court ever advise the jury that it could return such a partial verdict as to a greater offense when deadlocked on a lesser offense. Consequently, we are, at best, left to deduce, based upon the jury's request for an instruction pertaining to recklessness, that it was deliberating on a manslaughter charge, having acquitted the defendant of murder. At worst, on this record, the jury's declaration that it was deadlocked is ambiguous as to the root of the deadlock, that is, as to which charge its deliberations had reached an impasse.

In this case, the defendant asked the trial court to inquire of the jury reporting its deadlock whether it had, in fact, reached a partial verdict. The trial court refused to do so. The issue is whether the trial court,

---

[15] We are not persuaded by the state's contention that allowing inquiry into whether the jury had reached a partial verdict would violate the policy against invading jury deliberations. Reporting a verdict, even a partial verdict, does not intrude impermissibly into the jury deliberations. It focuses on the results, if any, of its deliberations, and not on the nature or content of those deliberations.

in rejecting the defendant's request to conduct an inquiry,[16] properly declared a mistrial.

As we have stated, the law is clear that a judge may declare a mistrial without the defendant's consent only if there is a "manifest necessity for the act, or the ends of public justice would otherwise be defeated." *United States* v. *Perez*, supra, 22 U.S. 579. It is obvious from the record before us in this case that the defendant did not consent to the mistrial. Therefore, the question is whether the trial court properly concluded that a high degree of necessity existed to justify the mistrial or that the ends of public justice would have been defeated had it not declared the mistrial. Id.

We conclude that neither ground for declaring a mistrial was satisfied. Had the jury been asked whether it had reached a verdict on the murder charge, public justice would not have been defeated, or even compromised. "If the answer had been in the negative, there would then have been a basis for the mistrial. If the answer had been that the jury had agreed on acquittal, then the defendant's 'valued right' [to have his trial completed by a particular tribunal] would have been upheld. There was no necessity at all, much less a high degree of necessity, to declare a mistrial before making the inquiry requested. All possible alternatives to a mistrial must be considered, employed and found wanting before declaration of a mistrial over the defendant's

---

[16] We do not hold in this case that, in the absence of a request, the trial court, sua sponte, has an obligation to make such an inquiry of the jury. The general rule is that the trial court does not have such an obligation. See, e.g., *Fitzgerald* v. *Lile*, 732 F. Sup. 784, 789–90 (N.D. Ohio), aff'd, 918 F.2d 178 (6th Cir. 1990); *Whiteaker* v. *State*, supra, 808 P.2d 277. A defendant may have a tactical reason for not requesting the trial court to question the jury about a partial verdict. Because jurors are presumed to understand and follow instructions, we do not, and the defendant here has not requested us to, place a burden on the trial court to inquire, sua sponte, further or perform a special poll of jurors who deliberate on cases involving lesser included offenses.

objection is justified." *State* v. *Pugliese*, 120 N.H. 728, 730, 422 A.2d 1319 (1980).

In this case, by not seeking clarification from the jury, the trial court failed to explore all reasonable alternatives to declaring a mistrial. *Robles* v. *Bamberger*, 219 App. Div. 2d 243, 246, 640 N.Y.S.2d 882 (1996) (where defendant requested that jury be asked if they had reached partial verdict, court had duty to explore all reasonable alternatives before declaring mistrial); see also *Stone* v. *Superior Court*, 31 Cal. 3d 503, 519, 646 P.2d 809, 183 Cal. Rptr. 647 (1982) ("[T]he trial court is constitutionally obligated to afford the jury an opportunity to render a partial verdict of acquittal on a greater offense when the jury is deadlocked only on an uncharged lesser included offense. Failure to do so will cause a subsequently declared mistrial to be without legal [manifest] necessity."). Without the inquiry by the trial court as to whether the jurors had reached a partial verdict on a greater offense, no manifest necessity existed.

## E

Therefore, the only issue remaining to be determined is the appropriate relief. We are left with a record that suggests that the jury may have been unanimous on one or more offenses, but deadlocked on at least one charge.[17] "[T]he record is not clear as to which of the

---

[17] The defendant offered affidavits by seven of the twelve jurors in conjunction with his motion to dismiss in an attempt to persuade the trial court that the jury had in fact reached a partial verdict on the murder charge, as well as on the first degree manslaughter charge. See footnote 11 of this opinion. The trial court concluded, nonetheless, that "[e]ven if the defense were to assemble affidavits from all of the jurors and all the jurors agreed that they had unanimously voted the defendant not guilty of the crime of murder, the defense has offered no precedent for substituting that assemblage of documents for the jury's declaration at the time of trial that it was unable to reach a verdict." Consequently, the trial court never made any findings regarding the affidavits.

This court would then, by way of fact-finding, be required to adjudicate the validity and the reliability of that evidence.

At this stage of the proceedings, we are incapable of making those neces-

included offenses the jury was considering at the time of its discharge. Without inquiry by the trial court into the jury's deliberations on the greater, included offenses, no necessity is manifest to declare a mistrial as to those offenses and thus jeopardy has attached." *State* v. *Castrillo*, supra, 90 N.M. 613–14. Consequently, the defendant contends that we must remand the case for a new trial limited to the last lesser included offense on which the jury had been charged, the charge of criminally negligent homicide. We agree.

Our confusion in this case "results from the fact that the trial judge declared a mistrial when the record was not clear whether the jury was hopelessly deadlocked on any particular charge. We can only say with certainty that the jury had to be deadlocked on murder in the first degree or one of the included offenses." *Whiteaker* v. *State*, supra, 808 P.2d 279; see *State* v. *Castrillo*, supra, 90 N.M. 614 ("Jeopardy did not attach to the . . . least of the included offenses. Had the jury reached a unanimous decision on that offense it could not have been in the posture it announced to the court."). "Because we have no way of knowing which charge the jury was deadlocked on, we must presume that it was the least serious charge, negligent homicide. We reach this conclusion noting that doubts about whether an offense is jeopardy-barred must be resolved 'in favor of the liberty of the citizen.' *Downum* v. *United States*, 372 U.S. 734, 738, 83 S. Ct. 1033, 1036, 10 L. Ed. 2d 100 (1963)." *Whiteaker* v. *State*, supra, 279. If we were to reach any other result, the defendant would face repros-

sary determinations. In general, "[i]t is the function of the trial court, not this court, to find facts." *State* v. *Lafferty*, 189 Conn. 360, 363, 456 A.2d 272 (1983). Imposing a fact-finding function on this court, therefore, would be contrary to generally established law. Indeed, it would be inconsistent with the entire process of trial fact-finding for an appellate court to do so. Thus, viewed through this prism, the affidavits had their primary role for the guidance of the fact finder—the trial court—and can play no role at this level in helping to determine the crimes of which the defendant was acquitted.

ecution for crimes of which he already might have been acquitted. This would directly contravene his constitutional protections against double jeopardy.[18]

### III

In the circumstances of this case, therefore, we are constrained to conclude that further prosecution of the defendant on murder and first and second degree manslaughter would violate the double jeopardy provision of the fifth amendment to the United States constitution.

The judgment is reversed in part, and the case is remanded with direction to grant the defendant's motion to dismiss the charges of murder and first and second degree manslaughter, and to order a new trial on the charge of criminally negligent homicide.

In this opinion BORDEN and PALMER, Js., concurred.

SULLIVAN, C. J., with whom NORCOTT, J., joins, concurring and dissenting. I agree with the majority that the trial court should have instructed the jury that it could return a partial verdict as to a greater offense when deadlocked on a lesser included offense, and that the trial court should not have declared a mistrial without inquiring if the jury had reached such a verdict. In

---

[18] Chief Justice Sullivan, in his concurring and dissenting opinion, is dissatisfied with the limited nature of the remand ordered by the majority. Specifically, he would remand the case to the trial court for an evidentiary hearing to determine precisely which of the offenses the jury was considering at the time of its discharge. Unlike other cases in which we have been asked to exercise our supervisory authority and order the trial court to conduct an evidentiary hearing; see *State* v. *Santiago*, 245 Conn. 301, 332–34, 715 A.2d 1 (1998); neither the state nor the defendant in this case has sought such a hearing, perhaps because they appreciate the difficulty that all twelve jurors could have in recalling the various included offenses on which they had been instructed nearly two years ago. In the absence of any request, Chief Justice Sullivan essentially invokes, sua sponte, our supervisory authority. This course is exercised without precedent.

my view, however, this court should remand the case to the trial court to conduct such an inquiry.

The defendant, James Tate, argued in his briefs to this court and at oral argument that this court may consider the affidavits from seven of the jurors, in which they stated, in essence, that the jury had unanimously determined that the state had not proven the elements of first degree manslaughter, but that the jurors were deadlocked on the charge of second degree manslaughter. See footnote 11 of the majority opinion. I agree with the majority that this court is not a fact-finding tribunal, but I see no reason that the trial court should not consider the affidavits and make such a factual determination.

The trial court concluded that "[e]ven if the defense were to assemble affidavits from all of the jurors and all the jurors agreed that they had unanimously voted the defendant not guilty of the crime of murder, the defense has offered no precedent for substituting that assemblage of documents for the jury's declaration at the time of trial that it was unable to reach a verdict." See footnote 17 of the majority opinion. The affidavits would not be a substitute for the jury's declaration, however, but merely a clarification of it. The majority has concluded, and I agree, that the court should have granted the defendant's request that the jury clarify whether it had acquitted the defendant of any of the offenses. Although that would have been the preferable course, I see nothing in our case law to suggest that, after the jury has been discharged, juror testimony should be inadmissible for the purpose of establishing whether the jury had reached a partial verdict.[1] I would

---

[1] We previously have not addressed this specific issue, but it is well established in this state that jurors may testify as to factual issues that do not involve the jurors' thought processes during deliberations. "[A]ffidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occurring during the trial or in the jury room, which does not essentially inhere in the verdict itself, as that a juror was improperly approached by a party, his agent, or attorney; that witnesses or others

hold that, if the state, at a factual hearing after the jury is discharged, can establish beyond a reasonable doubt that the defendant was not acquitted of a particular offense, the defendant may be retried for that offense.

conversed as to the facts or merits of the cause, out of court and in the presence of jurors; that the verdict was determined by aggregation and average or by lot, or game of chance or other artifice or improper manner. . . . [S]uch affidavit to avoid the verdict may not be received to show any matter which does essentially inhere in the verdict itself, as that the juror did not assent to the verdict; that he misunderstood the instructions of the court; the statements of the witnesses or the pleadings in the case; that he was unduly influenced by the statements or otherwise of his fellow jurors, or mistaken in his calculations or judgment, or other matter resting alone in the juror's breast. . . . [J]urors [are] competent to testify to the occurrence of incidents during trial or during their deliberations which might have affected the result of the trial, but [cannot] testify as to the impact of such incidents on their verdict." (Citations omitted; internal quotation marks omitted.) *Josephson* v. *Meyers*, 180 Conn. 302, 310–11, 429 A.2d 877 (1980).

In *Aillon* v. *State*, 168 Conn. 541, 363 A.2d 49 (1975), this court considered the admissibility of testimony concerning an ex parte conversation between the trial judge and one of the jurors, and the juror's subsequent statements to the jury concerning that conversation. We noted that the policies behind the outdated rule that a juror is always incompetent to testify in impeachment of his verdict "were to give stability to the verdicts of jurors, to minimize the temptation for jury-tampering, and to prevent inquisition into the arguments and reasoning of the jurors that go into their ultimate verdict." Id., 550. We held that those policies were served equally well by a narrower rule that allowed the admission of certain evidence extraneous to the mental operations of the jury. Id. Allowing postdischarge juror testimony on the narrow factual question of whether the jury reached a partial verdict would not undermine any of these policies.

